# EXHIBIT D

STATE OF MISSOURI   )
                    ) SS
CITY OF ST. LOUIS   )

**MISSOURI CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**
**(City of St. Louis)**

PAULA BALLARD, et al.,            )
                                  )
          Plaintiffs,             )
                                  )   Cause No. 042-07388A
vs.                               )
                                  )   Division No. 2
WYETH a/k/a WYETH, INC., et       )
al.,                              )
                                  )
          Defendants.             )

ORDER

The Court has before it Defendants' Motions to Sever and Dismiss. The Court has considered the submissions of the parties, the arguments of counsel and the relevant authorities, and now rules as follows.

This is a products liability case regarding Hormone Replacement Therapy (HRT) drugs. The plaintiffs are injured women who used various HRT drugs and their husbands, or the representatives of the estates of deceased HRT users. There are 34 defendants including different manufacturers of HRT drugs and various pharmacies that allegedly sold the HRT drugs.

The plaintiffs live in 32 different states. The women's lengths of exposure to HRT drugs ranged from three weeks to many years, and the dates of exposure spanned over three decades. The plaintiffs took differing combinations of 12 separate drugs from 26 different manufacturers. No single plaintiff has claims against all 34 defendants. Plaintiffs' petition does not specify which

plaintiffs took which manufacturers' drugs, although Plaintiffs state in their brief that most of the product identification discovery has been completed at this point. The women have alleged diverse injuries, including heart attacks and stroke, breast and ovarian cancer, lupus and arthritic shock, and anxiety and depression.

<u>Motion to Sever</u>

Defendants argue that the claims of the Plaintiffs are improperly joined and should be severed. Rule 52.05(a) states that for permissive joinder, "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." Two conditions must be satisfied under this rule: (1) a common question of law or fact, and (2) the right to relief must arise out of the same transaction or occurrence or the same series of transactions or occurrences. <u>State ex rel. Allen v. Barker</u>, 581 S.W.2d 818, 826 (Mo. banc 1979).

The permissive joinder of parties is fixed by the Rule. <u>State ex rel. Gulf Oil Corp. v. Weinstein</u>, 379 S.W.2d 172, 175 (Mo.App. 1964). <u>Gulf Oil</u> explained that where two plaintiffs purchased fuel in unrelated transactions at different times, they could neither be considered "the same transaction nor a series of transactions." <u>Id</u>. at 174-75. Further, where the fuel oil resulted in fires in different places on different dates, they could not be said to

2

constitute the same occurrence. _Id_. at 175.

Here, Plaintiffs have alleged different transactions spanning thirty years. Plaintiffs do not claim to have received their HRT drugs from an identical source, or to have seen the same doctors. Plaintiffs allege 118 separate injuries occurring at different times. In a pharmaceutical case, a plaintiff's claim depends on particular characteristics such as the plaintiff's medical history, her particular treatment, and her injury. Causation must be individually determined based on the injury alleged and other factors. Some of the plaintiffs' claims allege inadequate warnings, which must be evaluated based on the type of warnings issued by a particular drug manufacturer at a certain time for a certain type of injury.

The Eighth Circuit in <u>Mosley v. General Motors Corp.</u>, 497 F.2d 1330, 1333 (8th Cir. 1974), announced that the joinder rules should "permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." In that case, the Court allowed the joinder of ten plaintiffs who each had claims against General Motors for employment discrimination. The Court reasoned that Plaintiffs' claims, arising out of General Motors' company-wide policy of racial discrimination constituted the same series of transactions or occurrences under the joinder rules. Here, by contrast, Plaintiffs attempt to join claims by **and** against different parties. There is no overarching policy at issue here or even a single defendant responsible for each Plaintiff's injury. These claims are not "reasonably related" to allow a

3

joinder of plaintiffs. See <u>Turpeau v. Fidelity Financial Services, Inc.</u>, 936 F. Supp. 975, 978 (N.D. Ga. 1996).

The Supreme Court of Mississippi recently reversed a trial court's decision denying severance in a case similar to this one. The Court reasoned, in part, that "a joint trial would require 56 different fact situations, 56 sets of medical histories, and 56 sets of witnesses and testimony, all in addition to addressing the myriad causation and other products liability issues. Instead of fostering efficiency, such a trial would unavoidably confuse the jury and irretrievably prejudice the defendants." <u>Janssen Pharmaceutica, Inc. v. Armond</u>, 866 So.2d 1092, 1098 (Miss. 2004). The Court finds this ruling persuasive.

The Plaintiffs' claims arose out of separate and unique sets of circumstances. Each Plaintiff has her own individual combination of facts and evidence surrounding her ingestion of different HRT drugs. The fact that all Plaintiffs ingested HRT drugs is not sufficient to meet the "transaction or occurrence" requirement. Thus, the Court finds joinder of these claims improper under Rule 52.05.

Plaintiffs have argued that pre-trial matters will be more efficient and less complicated if this case is not severed. On the contrary, this Court finds that the joinder of so many disparate causes of action makes this case unduly complex and burdensome. While some discovery issues may be better suited to a consolidated case, judicial economy cannot permit joinder where the rules do not.

4

When parties are impermissibly joined in a cause of action, the Court has the authority to sever the cases and require the plaintiffs to proceed separately. Rule 52.06; Gulf Oil, 379 S.W.2d at 175. The Court finds that severance is required in this case.

While this Court, in applying the law of joinder, has concluded that the Plaintiffs herein were improperly joined, it notes that there are common questions of fact and common questions of law herein. Even following a severance, it is within the trial court's discretion to consolidate cases or order joint trials where it is necessary to avoid piecemeal litigation. Belden v. Chicago Title Ins. Co., 958 S.W.2d 54, 57 (Mo. App. E.D. 1997) and Rule 66.01(b) which provides:

> When civil actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the civil actions; it may order all the civil actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

This Court recognizes that the production of documents and other forms of discovery involving the common questions of law and fact will necessarily be duplicative and potentially burdensome if the cases are not consolidated, at least in part. The Court also notes that it is premature to order the consolidation of any of these cases at this time, because one of the primary bases for consolidation will be the identity of the drug or drugs ingested by each Plaintiff, and that information is not before the Court. The parties are instructed to use their best efforts to coordinate discovery in an efficient and harmonious manner, and this Court

5

will determine which cases, if any, shall be consolidated for
discovery or trial upon proper motion at a later date.

<u>Motion to Dismiss All Non-Missouri Cases under</u>

<u>Forum Non Conveniens</u>

Defendants next move to dismiss the cases of all Plaintiffs
who do not reside in Missouri. In determining whether to apply the
doctrine of forum non conveniens in a given case this Court must
consider six primary factors in the exercise of its discretion:

1. The place of accrual of the cause of action;
2. the location of witnesses;
3. the residence of the parties;
4. any nexus with the place of the suit;
5. the convenience to the public and burden on the court;
6. the availability to the plaintiff of another forum.

<u>Anglim v. Missouri Pacific Railroad Co</u>., 832 S.W.2d 298, 302 (Mo.
banc 1992); <u>Kuiper v. Busch Entertainment Corporation</u>, 845 S.W.2d
697, 699 (Mo.App. E.D. 1993). This list is not exclusive and the
weight to be given any one factor may differ depending on the
circumstances. <u>Connour v. Burlington Northern Railroad Company</u>, 889
S.W.2d 138, 143 (Mo.App. W.D. 1994). In addressing Defendants'
motion, the Court must keep in mind that Plaintiff's choice of a
forum should not be disturbed except for "weighty reasons" and only
if the balance is strongly in favor of the defendant. <u>Anglim</u>, 832
S.W.2d at 302.

Defendants have provided no facts in support of their motions
to dismiss except the state of residence of each Plaintiff. State
of residence, by itself, does little to persuade this Court that
this forum is inconvenient for litigation. Each case turns on its

own facts, and "evidentiary permutations justifying application of the [forum non conveniens] doctrine are unpredictable." Anglim, 832 S.W.2d at 302-303. Defendants' motion to dismiss the claims of "all non-Missouri plaintiffs" under the doctrine of forum non conveniens is denied. The Court may reconsider the issue separately as to any severed case upon proper motion.

<u>Statute of Limitations</u>

Defendants argue that some Plaintiffs' claims are barred by the state statute of limitations applicable to the claim. Some plaintiffs were diagnosed many years ago with the injuries they now allege were caused by HRT drugs. However, Plaintiffs sufficiently allege that Defendants fraudulently concealed the dangers of HRT drugs so that Plaintiffs did not, and could not, know the cause of their injuries until the release of a Women's Heath Institute Study on July 9, 2002 at the earliest. Fraudulent concealment by a defendant may toll the statute of limitations unless a plaintiff has actual knowledge of the cause of action. Section 516.280 RSMo; <u>Smile v. Lawson</u>, 435 S.W.2d 325, 327 (Mo. banc 1968). Construing Plaintiffs' pleadings liberally, the Court cannot find from the pleadings alone that the claims are time-barred.

<u>Failure to State a Claim</u>

Defendants also move to dismiss certain of Plaintiffs' claims for the failure to state a claim. A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition. The Court assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all

7

reasonable inferences therefrom. Murphy v. A. A. Mathews, a Division of CRS Group Engineers, Inc., 841 S.W.2d 671, 672 (Mo. banc 1992). No attempt is made to weigh any facts as to whether they are credible or persuasive. Instead, the petition is reviewed to see whether the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 306 (Mo. banc 1993).

Plaintiffs have requested leave to amend their complaint in the event the Court finds that Plaintiffs have failed to state a claim on any count.

Product Identification

Defendants argue that Plaintiffs' claims are ambiguous and insufficiently pleaded, such as they fail to identify the specific drug each Plaintiff ingested. Defendant Aventis moves to dismiss Plaintiffs' complaint because no Plaintiffs have alleged any injury from drugs manufactured by it. Several other Defendants argue that only a few of the numerous plaintiffs make specific claims against them. Plaintiffs argued at oral argument that they are still working to determine which drugs each Plaintiff took. Plaintiffs have conducted discovery on the issues of product identification but that information is not before this Court. The Court notes that Plaintiffs have already voluntarily dismissed claims against certain Defendants, curing some of the pleading deficiencies. Plaintiffs will have the opportunity to amend their pleadings following severance, and are encouraged to delete defendants

8

against whom that particular plaintiff has no claim. If this fails to remedy the remaining deficiencies, the Court will revisit the motions to dismiss.

<u>Failure to Warn</u>

In Count III, Plaintiffs allege a failure to warn pursuant to Restatement (Second) Torts § 388. Defendants Abbott Laboratories, Inc. ("Abbott"), Novo Nordisk, Inc. f/k/a Novo Nordisk Pharmaceuticals, Inc. ("NNI"), Solvay Pharmaceuticals, Inc. ("Solvay"), Bristol-Myers Squibb Company ("BMS"), Watson Laboratories, Inc. ("Watson"), Aventis Pharmaceuticals, Inc. ("Aventis"), and Qualitest Pharmaceuticals, Inc. ("Qualitest") (collectively, "Pharmaceutical Defendants") argue that Plaintiffs have failed to state a claim in Count III because the Pharmaceutical Defendants had no duty to warn consumers of the alleged risks and benefits associated with their products. Pharmaceutical Defendants point out that Missouri has adopted the "learned intermediary" doctrine. Pursuant to the learned intermediary doctrine, a manufacturer need only communicate warnings to doctors, not directly to consumers. <u>Krug v. Sterling Drug, Inc.</u>, 416 S.W.2d 143, 151 (Mo. 1967). Further, an allegation of the failure to provide an adequate warning to a doctor is not sufficient to state a claim for the failure to warn "if the prescribing physician had independent knowledge of the risk that the adequate warnings should have been communicated." <u>Doe v. Alpha Therapeutic Corp.</u>, 3 S.W.3d 404, 420 (Mo.App. E.D. 1999). The Pharmaceutical Defendants argue that Plaintiffs' failure to plead

9

that the treating physicians possessed no independent knowledge of the risks and potential side effects associated with hormone therapy makes the pleading insufficient to state a claim.

Plaintiffs do, in fact, allege in paragraph 260 of their complaint that the Plaintiffs' treating physicians "had no knowledge of the information concealed and/or suppressed by the Drug Defendants." In any case, this Court finds that Plaintiffs are not required to plead the absence of independent knowledge of risks on the part of the treating physicians to state a claim for failure to warn. The knowledge of the treating physician is an affirmative defense in a failure to warn case. See Alpha Therapeutic, 3 S.W.3d at 419. A plaintiff is not required to plead the absence of affirmative defenses in her pleading. Rules 55.01, 55.08. The Pharmaceutical Defendants' motion to dismiss Plaintiffs' failure to warn claim (Count III) is denied.

Defendants Wal-Mart Stores, Inc. ("Wal-Mart"), Walgreen Co. ("Walgreens"), Thrift Drugs, Inc. ("Eckerd"), and Rite Aid Corporation ("Rite Aid") (collectively, "Drug Store Defendants") also move to dismiss Count III because strict liability claims are barred as against health care providers pursuant to Budding v. SSM Health Care System, 19 S.W.3d 678, 681 (Mo. banc 2000).

Section 538.300 limits the types of tort actions that can be brought against a health care provider. Id. Plaintiffs argue that §538.300 and Budding do not apply to their actions against the Drug Store Defendants, because while "pharmacist" is included, a "pharmacy" is not listed in the definition of health care provider

as used in the statute. Section 538.205 defines "health care provider" as "any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate."

While this Court could find no decision from a Missouri state court that addressed the issue of whether a pharmacy is a health care provider for the purpose of Chapter 538, the United States District Court for the Eastern District of Missouri has resolved the issue in the affirmative while interpreting Missouri law:

> Section 538.205(4) includes the term "pharmacist" as well as "any other person or *entity that provides health care services under the authority of a license or certificate.*" (emphasis added). Thus, a pharmacy is a health care provider, for it renders services to a patient in the ordinary course of a pharmacist's profession.

Beuke v. Pharmacia & Upjohn Co., 2000 U.S. Dist. LEXIS 15271, *5 (E.D. Mo. Sept. 14, 2000). This Court elects to follow the same reasoning in determining that a pharmacy is a health care provider within the meaning of the statute.

Section 538.300 RSMo provides that a product liability claim, including a failure to warn claim, can not be brought against a health care provider. §§ 538.300, 537.760 RSMo; Budding, 19 S.W.3d at 683; Beuke, 2000 U.S. Dist LEXIS 15271 at *5. Count III is

11

therefore dismissed as to Defendants Wal-Mart, Walgreens, Eckerd, and Rite Aid.

### Fraud

Next, Defendants Abbott, NNI, CVS Pharmacy, Inc. ("CVS"), Solvay, BMS, Watson, Aventis, Wal-Mart, Walgreens, Eckerd, Rite Aid, and Qualitest argue that Plaintiffs have failed to plead their claim for fraud (Count IV) with specificity as required by the Rule 55.15, and thus have failed to state a claim for fraud. The rules governing the pleading of fraud are more precise than those which generally govern pleading a claim for relief. Miller v. Ford Motor Co., 732 S.W.2d 564, 565 (Mo.App. E.D. 1987).

The elements of fraud are: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity; 5) the speaker's intent the representation be acted upon by the other party; 6) the other party's ignorance of its falsity and right to rely on its truth; and 7) proximately caused injury. E.g., Green Acres Enterprises, Inc. v. Nitsche, 636 S.W.2d 149, 153 (Mo.App. W.D. 1982). Plaintiffs' petition attempts to state a claim for fraud by alleging:

250. The Drug Defendants… owed a duty to provide complete and accurate information regarding said drugs to the Drug Plaintiffs, their physicians, and anyone else they knew or should have known would ingest, prescribe or recommend the ingestion of said drugs.

251. The Drug Defendants misrepresented material facts regarding the safety and efficacy of the HRT Drugs and failed to inform and did conceal these material facts from the Drug Plaintiffs, their physicians and the general public.

12

252. The Drug Defendants fraudulently, intentionally and/or with gross negligence and recklessness misrepresented to the Drug Plaintiffs, their physicians, and the general public that the benefits of taking said drugs outweighed any risks, and/or fraudulently, intentionally and/or in a grossly negligent and reckless manner misrepresented and concealed safety and effectiveness information regarding said drugs, including but not limited to the propensity of said drugs to cause serious physical harm when used alone and in combination.

253. The continuous and ongoing course of action constituting fraud and misrepresentation on the Drug Plaintiffs, their physicians, and the general public started as early as 1991, if not earlier, and continued through repeated acts and non-disclosure every year since then, throughout the United States and elsewhere.

254. The HRT Drugs were in fact unsafe and the use of them posed a risk of injury and death which outweighed the purported benefits of their use, such that injury was in fact caused to the Drug Plaintiffs and others.

255. The Drug Defendants made misrepresentations and actively concealed adverse information at a time when the Drug Defendants knew, or should have known, that the HRT Drugs had defects, dangers, and characteristics that were other than what the Drug Defendants had represented to the prescribing doctors or other dispensing entities, the FDA, and the consuming public, including the Drug Plaintiffs.

256. Specific misrepresentations and/or active concealment by the Drug Defendants include, but are not limited to, the following:

   a. Failure to disclose that there had been insufficient studies regarding the safety and efficacy of the HRT Drugs either used alone and/or in combination for use in treating the symptoms of menopause;

   b. Marketing, promoting and/or selling the HRT Drugs as if they were fully and adequately tested, when they were not;

   c. Misrepresenting the safety and efficacy of the HRT Drugs in their labeling, advertising, product inserts, promotional materials, or other marketing and/or safety surveillance efforts;

13

d. Misrepresenting the existence and adequacy of testing of the HRT Drugs both pre- and post-marketing; and

e. Concealing or failing to disclose the severity and frequency of adverse health effects caused by the HRT Drugs.

257. The misrepresentations and/or active concealment alleged above were perpetuated directly and/or indirectly by the Drug Defendants, and those acting on their behalf.

258. The fraudulent misrepresentations of the Drug Defendants took the form of, among other things, express and implied statements, publicly disseminated misinformation, misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about the HRT Drugs, failure to disclose important safety and injury information regarding said drugs, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead regarding the safety of said drugs, all while having a duty to disclose such information to the Drug Plaintiffs and others.

259. The Drug Defendants knew or should have known that these representations were false and material at the time they were made or omitted or concealed, and made the representations with the intent or purpose that the Drug Plaintiffs and their physicians would rely on them, leading to the use of the HRT Drugs by the Drug Plaintiffs.

260. At the time of the Drug Defendants' fraudulent misrepresentations, the Drug Plaintiffs and their physicians were unaware of the falsity of the statements being made and believed them to be true. The Drug Plaintiffs and their physicians had no knowledge of the information concealed and/or suppressed by the Drug Plaintiffs.

261. The Drug Plaintiffs and their physicians justifiably and reasonably relied on and/or were induced by the misrepresentations and/or active concealment of the Drug Defendants, and reasonably relied on the absence of safety information which the Drug Defendants did suppress, conceal or fail to disclose to the detriment of the Drug Plaintiffs.

262. The misrepresentations and/or active concealment by the Drug Defendants constitute a continuing tort.

14

263. Drug Defendants made the misrepresentations and/or actively concealed information with the intention and specific desire that the Drug Plaintiffs, their physicians and the general public would rely on such misrepresentations or on the absence of information concealed by the Drug Defendants in selecting the HRT Drugs as a treatment for menopausal symptoms.

264. One or more of the Pharmacy Defendants aided and abetted the Drug Defendants in the misrepresentations and concealment set forth in this and other Counts.

265. As a direct and legal result of the matters set forth in this Count, Drug Plaintiffs sustained serious and permanent injuries, disability, mental and physical anguish both past and present, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and the loss of the ability to earn money in the future.

Plaintiffs do not specifically identify any allegedly fraudulent statement in Count IV. There is no description of the circumstances constituting fraud by time, place, or speaker. Plaintiffs outline an alleged history of misrepresentation and concealment by Defendants Wyeth, AHP, Wyeth-Ayerst Labs, Wyeth Pharmaceuticals, and Wyeth-Ayerst ("Wyeth Defendants") in paragraphs 133-214. However, Plaintiffs do not specifically attribute any representation anywhere in the petition to Defendants Abbott, NNI, CVS, Solvay, BMS, Watson, Aventis, Wal-Mart, Walgreens, Eckerd, Rite Aid, or Qualitest. They also fail to allege that Defendants knew of the falsity of any such representations. Plaintiffs have failed to state a claim for fraud against these Defendants.

Civil Conspiracy

Defendants Abbott, NNI, CVS, Solvay, BMS, Watson, Aventis, Wal-Mart, Walgreens, Eckerd, Rite Aid, and Qualitest similarly

15

argue that Plaintiffs have failed to state a claim for conspiracy in Count V. To state a claim for conspiracy under Missouri law, a claimant must allege that (1) two or more persons (2) with an unlawful objective (3) after a meeting of the minds (4) committed at least one act in furtherance of the conspiracy, and (5) the plaintiff was thereby damaged. Gettings v. Farr, 41 S.W.3d 539, 542 (Mo.App. E.D. 2001). "The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff." Id.

Plaintiffs allege that Defendants committed a conspiracy to defraud Plaintiffs and the public through "marketing strategies which included advertising campaigns to aggressively promote and sell their HRT Drugs by misleading and failing to warn potential users about the serious health effects that said defendants knew, or should have known, could result from the use of said drugs."

Plaintiffs further allege that the "Drug Defendants and one or more of the Pharmacy Defendants agreed and conspired among themselves to ensure that consumers, pharmacists, and prescribing physicians were deliberately misled regarding the safety and efficacy of the HRT Drugs."

A conspiracy claim requires allegations of specific facts showing a "meeting of the minds" among the alleged conspirators. The conclusions of the pleader are not to be considered in determining whether Plaintiffs have stated a cause of action for civil conspiracy. Royster v. Baker, 365 S.W.2d 496, 500 (Mo. 1963). In their argument against severance, Plaintiffs queried: "What if

16

<u>discovery reveals a conspiracy</u> among one or all of the defendants affecting all of the plaintiffs?" *Combined Response of Plaintiffs to Pending Motions of Defendants*, page 19 (emphasis added). This statement indicates to the Court that Plaintiffs do not yet possess sufficient facts indicating a conspiracy among the parties, but only hope to find one. Plaintiffs' conspiracy allegations are conclusory and fail to state a claim.

<u>Misrepresentation by Seller of Chattel</u>

Defendants Abbott, NNI, Solvay, BMS, Watson, Aventis, and Qualitest move to dismiss Count VI because Plaintiffs have failed to state a claim for Misrepresentation by Seller of Chattel under Restatement (Second) of Torts §402B or Restatement (Third) of Torts, Prod. Liab. §9. Defendants argue that Missouri does not recognize a cause of action under either Restatement provision, and even if such a cause of action existed, Plaintiffs have failed to state a claim.

Plaintiffs allege that Defendants made public misrepresentations of material fact concerning the safety and effectiveness of HRT drugs. However, like the insufficient claim for fraud in Count IV, Plaintiffs fail to recite any facts indicating what the alleged misrepresentations were, or any facts connecting these Defendants to any such misrepresentations. Because Plaintiffs' conclusory allegations are insufficient to state a claim for misrepresentation, it is unnecessary for this Court to decide whether Missouri would recognize a cause of action based on Restatement (Second) of Torts §402B or Restatement (Third) of

Torts, Prod. Liab. §9. Count VI is dismissed as to Defendants Abbott, NNI, Solvay, BMS, Watson, Aventis, and Qualitest.

Defendants Wal-Mart, Walgreens, Eckerd, and Rite Aid also move to dismiss Count VI on the same grounds as their motion to dismiss Count III, because strict liability claims are barred as against health care providers. Section 538.300 RSMo provides that a product liability claim can not be brought against a health care provider. §§ 538.300, 537.760 RSMo; Budding, 19 S.W.3d at 683; Beuke, 2000 U.S. Dist LEXIS 15271 at *5. Count VI is therefore dismissed as to Defendants Wal-Mart, Walgreens, Eckerd, and Rite Aid.

<u>Breach of Warranties</u>

In Count VII, Plaintiffs allege that Defendants breached express and implied warranties that HRT drugs were safe and fit for their intended use and particular purposes. Defendants Abbott, NNI, Solvay, BMS, Watson, Aventis, and Qualitest argue that in order to state a claim for breach of an express or implied warranty, a plaintiff must plead that she notified the defendant within a reasonable time of discovery of the goods' nonconformity.

A claim of breach of express warranty contains the following elements:

> 1) defendant's sale of the goods to plaintiff;
> 2) defendant's representation to plaintiff that the goods were of certain kind or quality;
> 3) defendant's representation induced plaintiff's purchase of, or was a material factor in plaintiff's decision to purchase, the goods;
> 4) nonconformity of the goods to the representations made;
> 5) plaintiff's notice to defendant, within a reasonable time of discovery of the goods' nonconformity, of such failure to conform; and

6) plaintiff's damages.

<u>Carpenter v. Chrysler Corp.</u>, 853 S.W.2d 346, 357 (Mo.App. E.D. 1993); <u>Stefl v. Medtronic, Inc.</u>, 916 S.W.2d 879, 882-83 (Mo.App. E.D. 1996). Plaintiffs failed to plead that any notice was given to Defendants regarding the nonconformity of the HRT drugs, and thus have failed to state a claim for breach of express or implied warranties.

<u>Corporate Responsibility</u>

In Count VIII, Plaintiffs claim that the Drug Defendants are liable to Plaintiffs as a result of "their participation in various joint ventures, parent/subsidiary relationships, and/or successor corporations," "their negligent supervision and actual supervision of various joint ventures, parent/subsidiary relationships, and/or successor corporations," and "the invalidity of various indemnification agreements." Defendants Abbott, NNI, Solvay, BMS, Watson, Aventis, and Qualitest move to dismiss Count VIII for failure to state a claim.

This purported claim does not state a viable cause of action. Plaintiffs fail to identify any joint venture, parent/subsidiary relationship or successor corporation to whom they are referring, and the claim is nothing more than a series of vague conclusory statements. Plaintiffs have failed to state a claim in Count VIII.

<u>Health Care Affidavit</u>

Finally, CVS, Wal-Mart, Walgreens, Eckerd, and Rite Aid move to dismiss Plaintiffs' remaining claims for the failure to provide a health care affidavit. Section 538.225.1 provides:

19

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

As this Court determined above, the Drug Store Defendants are health care providers within the meaning of the statute. _Beuke_, 2000 U.S. Dist LEXIS 15271 at *5. Plaintiffs, in response, move for an extension of time to file the health care affidavits. The Court may, upon a showing of good cause, order an extension of time to file a health care affidavit. Plaintiffs have demonstrated a good faith belief that the Drug Store Defendants were not subject to the affidavit requirement. Plaintiffs are granted an extension of 60 days from the date of this order to file affidavits in accordance with § 538.225.

**THEREFORE, IT IS ORDERED** that the petitions of each individual Plaintiff or group of Plaintiffs representing a single HRT user, as set forth in Appendix A, are hereby SEVERED. Each Plaintiff in each newly severed case is responsible for immediately curing any resulting defects in her complaint, including removing unnecessary Defendants and claims, by filing an amended petition, within sixty (60) days of the date of this order.

The first named Plaintiff (Paula Ballard and Brent L. Ballard) will remain in the original lawsuit.

20

The Clerk of the Court is directed to enter the following language on the docket of each newly opened case: "Refer to Cause No. 042-07388A for prior entries."

Plaintiffs in these newly severed cases need not serve new process. This order constitutes notice of severance.

Defendants Wal-Mart, Walgreens, Eckerd, and Rite Aid's Motions to Dismiss Counts III (Failure to Warn) and VI (Misrepresentation by Seller of Chattel) pursuant to §538.300 RSMo are GRANTED.

Defendants Abbott, NNI, CVS, Solvay, BMS, Watson, Aventis, Wal-Mart, Walgreens, Eckerd, Rite Aid, and Qualitest's Motions to Dismiss Count IV (Fraud) and Count V (Conspiracy) are GRANTED. Defendants Abbott, NNI, Solvay, BMS, Watson, Aventis, and Qualitest's Motions to Dismiss Count VI (Misrepresentation by Seller of Chattel), Count VII (Breach of Express and Implied Warranty), and Count VIII (Corporate Responsibility) for failure to state a claim are GRANTED. Pursuant to Rule 67.06, Plaintiffs are granted leave to amend their petitions regarding Counts IV, V, VI, VII and VIII in accordance with the foregoing order within sixty (60) days of the date of this Order.

Defendants' remaining Motions to Dismiss are DENIED.

SO ORDERED:

STEVEN R. OHMER, Judge

Dated: August 24, 2005

21

cc: John Driscoll
    Amy Lorenz Moser
    Deborah Moeller
    Christopher Hohn
    Mark Kinzie
    Maureen O. Bryan
    Peter Hoffman
    Joseph F. Devereux, Jr.
    John Kellogg
    Stefan Glynias
    Chuck Pierce
    James Humphrey
    Teresa Bartosiak

Appendix A

1. Carol Anderson
2. Nancy Andrews
3. Anna Mae Ayers
4. Sharon Baena and George Baena
5. Paula Ballard and Brent L. Ballard
6. Gayle Ballew and Robert Ballew
7. Lois Barg
8. Betty Bock and James N. Bock
9. Margaret Bickel and James R. Bickel
10. Marilyn Billeau and William L. Billeau
11. Linda Boelk and Arthur R. Boelk
12. Linda Bolton and Claud H. Bolton
13. Mary Bradley
14. Deborah Branson
15. Judith Brege
16. Elaine Briden
17. Jeanne Bross
18. Norma Dell Brown and William Brown
19. Carol S. Buchanan and David L. Buchanan
20. Linda Burchfield and John Burchfield
21. Mary Lou Burton
22. Theda Cagle and Earl D. Cagle
23. Betsy Calma and Roy D. Calma
24. Bonnie Campbell
25. Sylvia Campbell and James S. Campbell
26. Marilyn Carll
27. Donna M. Clark and James E. Clark
28. Cathy Coody
29. Patricia Cushman and Raymond R. Cushman
30. Donna Decker
31. Linda Deewall and Morris Deewall
32. Joyce DeLoach and James DeLoach
33. Pamela Derefield and Carl E. Derefield
34. Helen Devalk and Robert Henry Devalk
35. Angela DiPietro
36. Maureen Everett
37. Audrey Fenton
38. Brenda Ferguson and Jeff Ferguson
39. Marilyn Ferguson and Bobby E. Ferguson
40. Catherine Flores and Mario Flores
41. Doris Fortner and Walter Fortner
42. Doris Ganzy and John Ganzy
43. Lucy Garcia and Salvador Garcia
44. Carolyn George and James D. George
45. Arnold J. Gozzi, individually and as personal representative of the estate of Antoinette E. Gozzi, deceased
46. Margaret J. Grindle and Dennis E. Grindle
47. Susan Kay Grosor
48. Leona Hamm
49. Beverly Hellman and Randall Lee Hellman

23

50. Maxine Howard
51. Dorothy Hull
52. Bonnie Johnson
53. Dorothy Johnson and Lorenzo Johnson
54. Faye Johnson and Gerald E. Johnson
55. Patricia Johnston and Jerome W. Johnston
56. Barbara A. Jones and Bob Jones
57. Grace Jurewicz and Jerry Jurewicz
58. Rayjeana Kell
59. Martha Kennedy and Freddy Kennedy
60. Catherine Kennon
61. Roma Killian and Kenneth R. Killian
62. Barbara Lieberman
63. Mary Ann Long and Richard B. Long
64. Deanna Louderback
65. Ruth MacDuff and Matthew MacDuff
66. Ruth Mancini
67. Norma Maxfield
68. Gail McClellan
69. Judy Melendez
70. Donna Merwin and Joseph Merwin
71. Janet Miesenzahl and Nelson H. Miesenzahl
72. Ruth Ellen Morgan and Frank Morgan
73. Marie Morris and Joe F. Morris
74. Patricia Morton and Joe Wallace Morton
75. Michael Mounts, individually and as personal representative of the estate of Loretta Mounts, deceased
76. Sandra L. Mower and Theron Mower
77. Ann Mullins and Sambo Mullins
78. Francine S. Necowitz and Arthur J. Necowitz
79. Karen K. O'Neil
80. Jean Paradis
81. Loretta Patten
82. Harolene Pridy and Roger Pridy
83. Florence Jane Pritchett and Leonard Pritchett
84. Lucille Richardson and Howard Clifton Richardson
85. Lori Riley and Larry Alan Riley
86. Molena Roberts
87. Janis Roe
88. Elby F. Rogers, Sr., individually and as personal representative of the estate of Charlotte D. Rogers, deceased
89. Janet S. Roth and John Roth
90. Margaret Rubin-Finn
91. Anthony Sbrocchi, individually and as personal representative of the estate of Filomena Sbrocchi, deceased
92. Leonie Schindler and Fred F. Schindler
93. Carolyn Scott
94. Rochelle Scott, as personal representative of the estate of Dorthy O'Neal, deceased
95. June Seaton
96. Jane F. Sellepack

24

97.   Judy Shephard
98.   Walter Mae Shurm
99.   Connie Sides and Sammie L. Sides
100.  Linda Stamper and Hugh E. Stamper
101.  Linda Stroh
102.  Nancy Sullivan
103.  Linda Suter
104.  Betty Synegal
105.  Joyce Thompson and Richard A. Thompson
106.  Susan Trader and Peter M. Trader
107.  Gayle Ulmer
108.  Janice Walrod
109.  Tonya Warner
110.  Gail M. Watt
111.  Beverly Weatherspoon and Larry Weatherspoon
112.  Connie Webb
113.  Lorraine Wejrowski and Henry Wejrowski
114.  Patricia Wesley and Walter Wesley
115.  Arlene Weston and Wilbur M. Weston
116.  Susan Whitley
117.  Darylle D. Willenbrock and Theodore E. Willenbrock
118.  Aecha Wilson