**1622-CC10978**

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

| | |
|---|---|
| ANNIE JONES, | |
| and | |
| LISA ALFONSO, | |
| and | |
| JEANNE AMADON, | |
| and | Cause Number: |
| CAROL ANDREWS, | Division: |
| and | **JURY TRIAL DEMANDED** |
| FELICIA BENSON, Individually and as Representative of the Estate of LOLA BENSON, deceased, | |
| and | |
| SHERYL BLANCHETT, | |
| and | |
| REGINA BONDWEAVER, Individually and as Representative of the Estate of CONSTANCE REED HARRIS, deceased, | |
| and | |
| MISTY BRINLEE, | |
| and | |
| PHILLIP BURNETTE, Individually and as Representative of the Estate of CHERYL BURNETTE, deceased, | |
| and | |
| LILLIAN BURNS-GARCIA, | |

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

and

BERNADETTE CARTER-CRUZ,

and

CAROL CHIMENTO, Individually and as
Representative of the Estate of GAIL CHIMENTO,
deceased,

and

SUNITA CHINAPANA,

and

CORNELL CLEMENTS, Individually and as Personal
Administrator of the Estate of NITA CLEMENTS,
deceased,

and

CYNTHIA COLEMAN,

and

LEE COLEMAN,

and

BETHANY CONNOLLY-AMBURGEY,

and

SUSAN COX,

and

SHARON CRIADO,

and

VICTORIA DAVIDSON,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

and

DETRA DEESE, Individually and as Representative of the Estate of ROSA ALLEN, deceased,

and

ELSA DIBERNARDO,

and

PAMELA ESTELLE,

and

TONI FANFA,

and

MARIA FERRAN,

and

VIRGIL GARCIA, Individually and as Representative of the Estate of Mercedes Garcia, deceased,

and

STANLEY GLOSTER, JR., Individually and as Representative of the Estate of SHIRLEY MCKINZIE, deceased,

and

DOROTHY GRIFFITH,

and

CARMELA GUERRA,

and

DOMINIQUE HAMILTON,

and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

MARY M. HAMMER,

and

ALAN HARRISON, Individually and as Personal Administrator of the Estate of KRYSTAL DERY HARRISON, deceased,

and

NITRA HEDRICK,

and

NANCY HEINZ,

and

KAREN HERNANDEZ,

and

CRYSTAL HORTON,

and

DAWN HOUSE,

and

JOANN IANNIELLO,

and

LINDA JOHNSON,

and

TABITHA JOHNSON, Individually and as representative of the Estate of ROSE RICHARDSON, deceased,

and

MAGGIE JONES,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

and

ELSA KEY,

and

TERRI KOEHLER,

and

DEBRA KYTE,

and

LISA LITTLEFIELD, Individually and as daughter and next friend of the Estate of LINDA HAMEL, deceased,

and

REMIJIO LONGORIA, JR., Individually and as Representative of the Estate of ALMA LONGORIA, deceased,

and

SHIRLEY LOVE,

and

RHONDA LOW,

and

DAWN LOWE,

and

BOBBY LOWMAN, Individually and as Representative of the Estate of PAMELA LOWMAN, deceased,

and

JOHN A. MACY,

and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

JERRY MARSHALL, Individually and as
Representative of the Estate of LACEY MARSHALL,
deceased,

and

LAURA MARTINEZ,

and

MARIE MATTEI,

and

JOYCE MCGONIGLE,

and

LINDA METTLER,

and

MANDY MYERS,

and

LAURIE NUNES,

and

CECILIA OGLESBY,

and

AMBER ORMOND,

and

CAROL PATTERSON,

and

TAMMY PECK,

and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

MARCIA PHILLIPS,

and

MICHAEL REINHART, Individually and as
Representative of the Estate of CONNIE REINHART,
deceased,

and

PAULINE ROBERTS,

and

SANDRA SEMENAS, Individually and as
Representative of the Estate of ROSEMARY
SEMENAS, deceased,

and

REGINALD SMALL, Individually and as
Representative of the Estate of Maxine Driver,
deceased,

and

TREVIA STEPHENS,

and

CAROLYN SUSKA,

and

HAYLEY TENNYSON,

and

DIRK THOMAS, Individually and as Representative of
the Estate of LINDA THOMAS, deceased,

and

MYRA THOMPSON, Individually and as
Representative of the Estate of VERNA THOMPSON,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

deceased,

and

SANDRA VANNOY,

and

MICHAEL VARVIL, Individually and as
Administrator of the Estate of CONSTANCE
VARVIL, deceased,

and

LESA WILBURN,

and

PENNY YOUNG,

                Plaintiffs,

vs.

JOHNSON & JOHNSON, INC.

Serve:    M.H. Ullman
           One Johnson & Johnson Plaza
           New Brunswick, New Jersey 08933

and

JOHNSON & JOHNSON CONSUMER, INC. f/k/a
JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.

Serve:    Johnson & Johnson Registered Agent
           One Johnson & Johnson Plaza
           New Brunswick, New Jersey 08933

and

IMERYS TALC AMERICA, INC. f/k/a LUZENAC
AMERICA, INC.

Serve:    CT Corporation

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

120 South Clayton Avenue
St. Louis, MO 63105

Defendants.

## PETITION

COME NOW Plaintiffs, by and through their undersigned counsel, and for their Petition against Defendants Johnson & Johnson; Johnson and Johnson Consumer Incorporated f/k/a Johnson & Johnson Consumer Companies, Inc.; Imerys Talc America, Inc., f/k/a Luzenac America, Inc., allege the following upon information and belief (including investigation made by and through Plaintiffs' counsel), except those allegations that pertain to Plaintiffs, which are based on personal knowledge:

## INTRODUCTION

1.      Plaintiffs bring this cause of action against Defendants pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure, as their claims arise out of the same series of transactions and occurrences, and their claims involve common questions of law and/or fact. All claims in this action are a direct and proximate result of Defendants' and/or their corporate predecessors' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of the products known as Johnson & Johnson Baby Powder and Shower to Shower (hereinafter "the PRODUCTS"). All Plaintiffs in this action seek recovery for damages as a result of developing ovarian cancer, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of talcum powder, and the attendant effects of developing ovarian cancer. All of the claims involve common legal and medical issues.

## PARTIES

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

2.      Plaintiff Annie Jones a citizen of the City of St. Louis, State of Missouri.  At all pertinent times, including from approximately 1982 to 2016, Plaintiff Annie Jones purchased and applied talcum powder in the State of Missouri.  In or around August 2015, Plaintiff Annie Jones was diagnosed with ovarian cancer, which developed in the State of Missouri.  Plaintiff Annie Jones developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Annie Jones has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Annie Jones has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Annie Jones applied talcum powder in the State of Missouri.

3.      Plaintiff Lisa Alfonso is a citizen of the City of Treasure Island, State of Florida.  At all pertinent times, including from approximately 1964 through June 2011 Plaintiff Lisa Alfonso purchased and applied talcum powder in the State of Florida.  In or around June 23, 2011, Plaintiff Lisa Alfonso was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Lisa Alfonso developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Lisa Alfonso has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lisa Alfonso has otherwise been damaged in a personal and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

pecuniary nature. At all pertinent times, Plaintiff Lisa Alfonso applied talcum powder in the State of Florida.

4.      Plaintiff Jeanne Amadon is a citizen of the City of Clayville, State of Rhode Island. At all pertinent times, including from approximately October 1952 to August 2013, Plaintiff Jeanne Amadon purchased and applied talcum powder in the State of Rhode Island. In or around March 2014, Plaintiff Jeanne Amadon was diagnosed with ovarian cancer, which developed in the State of Rhode Island. Plaintiff Jeanne Amadon developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Jeanne Amadon has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jeanne Amadon has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Jeanne Amadon applied talcum powder in the State of Rhode Island.

5.      Plaintiff Carol Andrews is a citizen of the City of Bayou Vista, State of Texas. At all pertinent times, including from approximately 1960 to 1998, Plaintiff Carol Andrews purchased and applied talcum powder in the State of Texas. In or around November 2014, Plaintiff Carol Andrews was diagnosed with ovarian cancer, which developed in the State of Texas. Plaintiff Carol Andrews developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

direct and proximate result of these injuries, Plaintiff Carol Andrews has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carol Andrews has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Carol Andrews applied talcum powder in the State of Texas.

6.     Plaintiff Felicia Benson, an adult whose principal place of residence is in the City of Wayne, State of Michigan, brings this action individually and in her capacity as representative of the Estate of Lola Benson. Plaintiff Felicia Benson is pursuing this action due to the wrongfully caused premature death of her mother, Lola Benson, on behalf the Estate of Lola Benson and all wrongful death beneficiaries/statutory distributees of Lola Benson. The premature death of Lola Benson was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Mich. Comp. Laws § 600.2922, *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

7.     Plaintiff Sheryl Blanchett is a citizen of the City of Alapaha, State of Georgia.  At all pertinent times, including from approximately 1973 to 1993, Plaintiff Sheryl Blanchett purchased and applied talcum powder in the State of Georgia.  In or around November 1998, Plaintiff Sheryl Blanchett was diagnosed with ovarian cancer, which developed in the State of

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Georgia.  Plaintiff Sheryl Blanchett developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Sheryl Blanchett has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sheryl Blanchett has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Sheryl Blanchett applied talcum powder in the State of Georgia.

8.     Plaintiff Regina Bondweaver is an adult whose principal place of residence is in the City of St. Louis, State of Missouri.  The premature death of Constance Reed Harris was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to §537.080 of the Missouri Revised Statutes, which is commonly known as the Missouri "Wrongful Death Act," Plaintiff, on behalf of the class of persons entitled to recover under the Wrongful Death Act, seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

9.     Plaintiff Misty Brinlee is a citizen of the City of Leesville, State of Louisiana.  At all pertinent times, including from approximately November 1988 to 2014, Plaintiff Misty

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Brinlee purchased and applied talcum powder in the State of Louisiana.  In or around 2009, Plaintiff Misty Brinlee was diagnosed with ovarian cancer, which developed in the State of Louisiana.  Plaintiff Misty Brinlee developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Misty Brinlee has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Misty Brinlee has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Misty Brinlee applied talcum powder in the State of Louisiana.

10.     Plaintiff Phillip Burnette, is an adult whose principal place of residence is in the City of Brea, State of California, brings this action individually and in his capacity as representative of the Estate of Cheryl Burnette, Deceased. Plaintiff Phillip Burnette is pursuing this action due to the wrongfully caused premature death of his wife, Ashok Sally, on behalf the Estate of Cheryl Burnette and all wrongful death beneficiaries/statutory distributees of Cheryl Burnette. The premature death of Cheryl Burnette was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to the Wrongful Death and/or Survival Statute of the State of California, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

11.      Plaintiff Lillian Burns-Garcia is a citizen of the City of Phoenix, State of Arizona.  At all pertinent times, including from approximately 1970 to 2000, Plaintiff Lillian Burns-Garcia purchased and applied talcum powder in the States of New York and Arizona.  In or around August 2008, Plaintiff Lillian Burns-Garcia was diagnosed with ovarian cancer, which developed in the State of Arizona.  Plaintiff Lillian Burns-Garcia developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Lillian Burns-Garcia has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lillian Burns-Garcia has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Lillian Burns-Garcia applied talcum powder in the States of New York and Arizona.

12.      Plaintiff Bernadette Carter-Cruz is a citizen of the City of Port Sulphur, State of Louisiana.  At all pertinent times, including from approximately July 1976 to October 2014, Plaintiff Bernadette Carter-Cruz purchased and applied talcum powder in the States of New York and Louisiana.  In or around September 2014, Plaintiff Bernadette Carter-Cruz was diagnosed with ovarian cancer, which developed in the State of New York.  Plaintiff Bernadette Carter-Cruz developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Bernadette Carter-Cruz has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Bernadette Carter-Cruz has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Bernadette Carter-Cruz applied talcum powder in the States of New York and Louisiana.

13.     Plaintiff Carol Chimento, is an adult whose principal place of residence is in the City of Montville, State of New Jersey, brings this action individually and in her capacity as representative of the Estate of Gail Chimento, Deceased. Plaintiff Carol Chimento is pursuing this action due to the wrongfully caused premature death of her mother, Gail Chimento, on behalf the Estate of Gail Chimento and all wrongful death beneficiaries/statutory distributees of Gail Chimento. The premature death of Gail Chimento was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to the Wrongful Death and/or Survival Statute of the State of New Jersey, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, and other damages as allowed by law.

14.     Plaintiff Sunita Chinapana is a citizen of the City of Coral Springs, State of Florida.  At all pertinent times, including from approximately 1985 to 2015, Plaintiff Sunita Chinapana purchased and applied talcum powder in the States of New York and Florida.  In or

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

around January 2013, Plaintiff Sunita Chinapana was diagnosed with ovarian cancer, which developed in the State of Florida.  Plaintiff Sunita Chinapana developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Sunita Chinapana has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sunita Chinapana has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Sunita Chinapana applied talcum powder in the States of New York and Florida.

15.     Plaintiff Cornell Clements, an adult whose principal place of residence is in the City of Denver, State of Colorado, brings this action individually and in his capacity as Personal Representative of the Estate of Nita Clements. Plaintiff Cornell Clements is pursuing this action due to the wrongfully caused premature death of his wife, Nita Clements, on behalf the Estate of Nita Clements and all wrongful death beneficiaries/statutory distributees of Nita Clements. The premature death of Nita Clements was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Colo. Rev. Stat.§ 13-21-201-204, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

16.     Plaintiff Cynthia Coleman is a citizen of the City of Myrtle Beach, State of South Carolina. At all pertinent times, including from approximately 2002 to 2012, Plaintiff Cynthia Coleman purchased and applied talcum powder in the State of South Carolina. In or around April 2012, Plaintiff Cynthia Coleman was diagnosed with ovarian cancer, which developed in the State of South Carolina. Plaintiff Cynthia Coleman developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Cynthia Coleman has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Cynthia Coleman has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Cynthia Coleman applied talcum powder in the State of South Carolina.

17.     Plaintiff Lee Coleman is a citizen of the City of Delray Beach, State of Florida. At all pertinent times, including from approximately 1987 to March 2016, Plaintiff Lee Coleman purchased and applied talcum powder in the State of Florida.  In or around 2011, Plaintiff Lee Coleman was diagnosed with ovarian cancer, which developed in the State of Florida.  Plaintiff Lee Coleman developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Lee Coleman has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

life, and Plaintiff Lee Coleman has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Lee Coleman applied talcum powder in the State of Florida.

18.     Plaintiff Bethany Connolly-Amburgey is a citizen of the City of Northglenn, State of Colorado.  At all pertinent times, including from approximately 1982 to 1988, Plaintiff Bethany Connolly-Amburgey purchased and applied talcum powder in the States of North Carolina and Ohio.  In or around May 2007, Plaintiff Bethany Connolly-Amburgey was diagnosed with ovarian cancer, which developed in the State of Colorado.  Plaintiff Bethany Connolly-Amburgey developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Bethany Connolly-Amburgey has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Bethany Connolly-Amburgey has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Bethany Connolly-Amburgey applied talcum powder in the States of North Carolina and Ohio.

19.     Plaintiff Susan Cox is a citizen of the City of Nashua, State of New Hampshire.  At all pertinent times, including from approximately 1976 to 1996, Plaintiff Susan Cox purchased and applied talcum powder in the State of Massachetts.  In or around January 2014, Plaintiff Susan Cox was diagnosed with ovarian cancer, which developed in the State of New Hampshire.  Plaintiff Susan Cox developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Susan Cox has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Susan Cox has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Susan Cox applied talcum powder in the State of Massachusetts.

20.     Plaintiff Sharon Criado is a citizen of the City of Galveston, State of Texas.  At all pertinent times, including from approximately 1956 to 2015, Plaintiff Sharon Criado purchased and applied talcum powder in the State of Texas.  In or around May 2013, Plaintiff Sharon Criado was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Sharon Criado developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Sharon Criado has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sharon Criado has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Sharon Criado applied talcum powder in the State of Texas.

21.     Plaintiff Victoria Davidson is a citizen of the City of Lawrence, State of Kansas.  At all pertinent times, including from approximately 1984 to 2014, Plaintiff Victoria Davidson purchased and applied talcum powder in the State of Kansas.  In or around November 2014, Plaintiff Victoria Davidson was diagnosed with ovarian cancer, which developed in the

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

State of Kansas.  Plaintiff Victoria Davidson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Victoria Davidson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Victoria Davidson has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Victoria Davidson applied talcum powder in the State of Kansas.

22.     Plaintiff Detra Deese an adult whose principal place of residence is in the City of Crewe, State of Virginia, brings this action individually and in her capacity as representative of the Estate of Rosa Allen. Plaintiff Detra Deese is pursuing this action due to the wrongfully caused premature death of her mother, Rosa Allen, on behalf the Estate of Rosa Allen and all wrongful death beneficiaries/statutory distributees of Rosa Allen. The premature death of Rosa Allen was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Va. Code Ann. § 8.01-244, *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

23.     Plaintiff Elsa DiBernardo is a citizen of the City of Mansfield, State of Pennsylvania.  At all pertinent times, including from approximately 1971 to October 2015, Plaintiff Elsa DiBernardo purchased and applied talcum powder in the State of Pennsylvania.  In or around March 2015, Plaintiff Elsa DiBernardo was diagnosed with ovarian cancer, which developed in the State of Pennsylvania.  Plaintiff Elsa DiBernardo developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.   As a direct and proximate result of these injuries, Plaintiff Elsa DiBernardo has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Elsa DiBernardo has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Elsa DiBernardo applied talcum powder in the State of Pennsylvania.

24.     Plaintiff Pamela Estelle is a citizen of the City of Woodbury, State of New Jersey. At all pertinent times, including from approximately 1984 to 2016, Plaintiff Pamela Estelle purchased and applied talcum powder in the States of New York, New Jersey, and Florida.  In or around February 2014, Plaintiff Pamela Estelle was diagnosed with ovarian cancer, which developed in the State of New Jersey.  Plaintiff Pamela Estelle developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Pamela Estelle has incurred and will incur medical expenses in the future, has endured and will endure pain and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

suffering and loss of enjoyment of life, and Plaintiff Pamela Estelle has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Pamela Estelle applied talcum powder in the States of New York, New Jersey, and Florida.

25.     Plaintiff Toni Fanfa is a citizen of the City of Cave Junction State of Oregon.  At all pertinent times, including from approximately January 2001 through 2014 Plaintiff Toni Fanfa purchased and applied talcum powder in the State of California.  In or around October 2014, Plaintiff Toni Fanfa was diagnosed with ovarian cancer, which developed in the State of Oregon. Plaintiff Toni Fanfa developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Toni Fanfa has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Toni Fanfa has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Toni Fanfa applied talcum powder in the State of California.

26.     Plaintiff Maria Ferran is a citizen of the City of Fort Mill, State of South Carolina.  At all pertinent times, including from approximately 1973 to 2013, Plaintiff Maria Ferran purchased and applied talcum powder in the States of New York, North Carolina, and South Carolina.  In or around February 2004, Plaintiff Maria Ferran was diagnosed with ovarian cancer, which developed in the State of New York.  Plaintiff Maria Ferran developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Maria Ferran has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Maria Ferran has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Maria Ferran applied talcum powder in the States of New York, North Carolina, and South Carolina.

27.     Plaintiff Virgil Garcia, an adult whose principal place of residence is in the City of Kenner, State of Louisiana, brings this action individually and in his capacity as representative of the Estate of Mercedes Garcia. Plaintiff Virgil Garcia is pursuing this action due to the wrongfully caused premature death of his wife, Mercedes Garcia, on behalf the Estate of Mercedes Garcia and all wrongful death beneficiaries/statutory distributees of Mercedes Garcia. The premature death of Mercedes Garcia was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Louisiana Civil Code articles 2315.1 and 2315.2, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

28.     Plaintiff Stanley Gloster, Sr., an adult whose principal place of residence is in the City of Tampla, State of Florida, brings this action individually and in his capacity as

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

representative of the Estate of Shirley McKinzie. Plaintiff Stanley Gloster, Sr. is pursuing this action due to the wrongfully caused premature death of his mother, Shirley McKinzie, on behalf the Estate of Shirley McKinzie and all wrongful death beneficiaries/statutory distributees of Shirley McKinzie. The premature death of Shirley McKinzie was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Fla. Stat. Ann. § 768.16, *et seq*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

29.     Plaintiff Dorothy Griffith is a citizen of the City of Brownsboro, State of Texas. At all pertinent times, including from approximately 1979 to 2006, Plaintiff Dorothy Griffith purchased and applied talcum powder in the State of Florida.  In or around February 2015, Plaintiff Dorothy Griffith was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Dorothy Griffith developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Dorothy Griffith has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Dorothy Griffith has otherwise been damaged in a personal and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

pecuniary nature.  At all pertinent times, Plaintiff Dorothy Griffith applied talcum powder in the State of Florida.

30.     Plaintiff Carmela Guerra is a citizen of the City of Houston, State of Texas.  At all pertinent times, including from approximately 1993 to 2015, Plaintiff Carmela Guerra purchased and applied talcum powder in the State of Texas.  In or around January 2014, Plaintiff Carmela Guerra was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Carmela Guerra developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Carmela Guerra has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carmela Guerra has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Carmela Guerra applied talcum powder in the State of Texas.

31.     Plaintiff Dominique Hamilton is a citizen of the City of Brooklyn, State of New York.  At all pertinent times, including from approximately 2007 to 2016, Plaintiff Dominique Hamilton purchased and applied talcum powder in the States of New York, Florida, New Jersey, and Pennsylvania.  In or around December 2014, Plaintiff Dominique Hamilton was diagnosed with ovarian cancer, which developed in the State of New York.  Plaintiff Dominique Hamilton developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Dominique Hamilton has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Dominique Hamilton has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Dominique Hamilton applied talcum powder in the States of New York, Florida, New Jersey, and Pennsylvania.

32.     Plaintiff Mary M. Hammer is a citizen of the City of Lake City, State of Pennsylvania.  At all pertinent times, including from approximately 1988 through August, 2016, Plaintiff Mary M. Hammer purchased and applied talcum powder in the State of Pennsylvania, the State of Washington and the State of Texas.  Plaintiff Mary M. Hammer resided in the State of Pennsylvania from 1968 through 2005 and from 2012 through present and purchased and applied talcum powder during her residency.  Plaintiff Mary M. Hammer resided in the State of Washington from 2005 to 2009 and purchased and applied talcum powder during her residency.  She moved to the State of Texas in 2009 where she resided until 2012 and purchased and applied talcum powder during her residency.  She has lived continuously in the State of Pennsylvania from 2012 until present.  In or around February, 2016, Plaintiff Mary M. Hammer was diagnosed with ovarian cancer, which developed in the State of Pennsylvania.  Plaintiff Mary M. Hammer developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Mary M. Hammer has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

life, and Plaintiff Mary M. Hammer has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Mary M. Hammer applied talcum powder in the State of Pennsylvania from 1988 through August, 2016 with the exception of 2005 through 2009 when she resided in the State of Washington and 2009 through 2012 when she resided in the State of Texas.

33.     Plaintiff Alan Harrison, an adult whose principal place of residence is in the City of Canon City, State of Colorado, brings this action individually and in his capacity as Personal Representative of the Estate of Krystal Dery Harrison. Plaintiff Alan Harrison is pursuing this action due to the wrongfully caused premature death of his wife, Krystal Dery Harrison, on behalf the Estate of Krystal Dery Harrison and all wrongful death beneficiaries/statutory distributees of Krystal Dery Harrison. The premature death of Krystal Dery Harrison was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Colo. Rev. Stat.§ 13-21-201-204, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

34.     Plaintiff Nitra Hedrick is a citizen of the City of West Linn, State of Oregon.  At all pertinent times, including from approximately 1943-2016, Plaintiff Nitra Hedrick purchased and applied talcum powder in the States of Oregon.  In or around January 2007, Plaintiff Nitra Hedrick was diagnosed with ovarian cancer, which developed in the State of Oregon.  Plaintiff

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Nitra Hedrick developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Nitra Hedrick has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Nitra Hedrick has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Nitra Hedrick applied talcum powder in the State of Oregon.

35.     Plaintiff Nancy Heinz is a citizen of the City of Wheatland, State of Wyoming.  At all pertinent times, including from approximately 1972 to 2016, Plaintiff Nancy Heinz purchased and applied talcum powder in the States of New Mexico, Colorado, Wyoming, California, Texas, Montana, and Nebraska. In or around November 2012, Plaintiff Nancy Heinz was diagnosed with ovarian cancer, which developed in the State of Texas.  Plaintiff Nancy Heinz developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Nancy Heinz has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Nancy Heinz has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Nancy Heinz applied talcum powder in the States of New Mexico, Colorado, Wyoming, California, Texas, Montana, and Nebraska.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

36.     Plaintiff Karen Hernandez is a citizen of the City of Prior Lake, State of Minnesota.  At all pertinent times, including from approximately 1950 to 2000, Plaintiff Karen Hernandez purchased and applied talcum powder in the State of Minnesota.  In or around February 2000, Plaintiff Karen Hernandez was diagnosed with ovarian cancer, which developed in the State of Minnesota.  Plaintiff Karen Hernandez developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Karen Hernandez has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Karen Hernandez has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Karen Hernandez applied talcum powder in the State of Minnesota.

37.     Plaintiff Crystal Horton is a citizen of the City of Rineyville, State of Kentucky. At all pertinent times, including from approximately January 1987 to February 2014, Plaintiff Crystal Horton purchased and applied talcum powder in the State of Kentucky.  In or around January 2014, Plaintiff Crystal Horton was diagnosed with ovarian cancer, which developed in the State of Kentucky.  Plaintiff Crystal Horton developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Crystal Horton has incurred and will incur medical expenses in the future, has endured and will endure pain and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

suffering and loss of enjoyment of life, and Plaintiff Crystal Horton has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Crystal Horton applied talcum powder in the State of Kentucky.

38.    Plaintiff Dawn House is a citizen of the City of Belridge, State of Missouri.  At all pertinent times, including from approximately 1995 to 2016, Plaintiff Dawn House purchased and applied talcum powder in the State of Missouri.  In or around November 2011, Plaintiff Dawn House was diagnosed with ovarian cancer, which developed in the State of Missouri.  Plaintiff Dawn House developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Dawn House has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Dawn House has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Dawn House applied talcum powder in the State of Missouri.

39.    Plaintiff JoAnn Ianniello is a citizen of the City of Larchmont, State of New York.  At all pertinent times, including from approximately 1953 to 2015, Plaintiff JoAnn Ianniello purchased and applied talcum powder in the State of New York.  In or around November 2013, Plaintiff JoAnn Ianniello was diagnosed with ovarian cancer, which developed in the State of New York.  Plaintiff JoAnn Ianniello developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff JoAnn Ianniello has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff JoAnn Ianniello has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff JoAnn Ianniello applied talcum powder in the State of New York.

40.     Plaintiff Linda Johnson is a citizen of the City of Sheffield, State of Alabama.  At all pertinent times, including from approximately 1967 to February 2015, Plaintiff Linda Johnson purchased and applied talcum powder in the State of Alabama.  In or around February 2015, Plaintiff Linda Johnson was diagnosed with ovarian cancer, which developed in the State of Alabama.  Plaintiff Linda Johnson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Linda Johnson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Linda Johnson has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Linda Johnson applied talcum powder in the State of Alabama.

41.     Plaintiff Tabitha Johnson, an adult whose principal place of residence is in the City of Bellflower, State of Missouri, brings this action individually and in her capacity as representative of the Estate of Rose Richardson. Plaintiff Tabitha Johnson is pursuing this action due to the wrongfully caused premature death of her mother, Rose Richardson, on behalf the

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Estate of Rose Richardson and all wrongful death beneficiaries/statutory distributees of Rose Richardson. The premature death of Rose Richardson was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Mo. Rev Stat. § 537.080, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

42.     Plaintiff Maggie Jones is a citizen of the City of Bronx, State of New York.  At all pertinent times, including from approximately 1967 to 2014, Plaintiff Maggie Jones purchased and applied talcum powder in the State of New York.  In or around October 2014, Plaintiff Maggie Jones was diagnosed with ovarian cancer, which developed in the State of New York. Plaintiff Maggie Jones developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Maggie Jones has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Maggie Jones has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Maggie Jones applied talcum powder in the State of New York.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

43.     Plaintiff Elsa Key is a citizen of the City of Shady Spring, State of West Virginia. At all pertinent times, including from approximately 1969 to 2012, Plaintiff Elsa Key purchased and applied talcum powder in the States of Kentucky and West Virginia.  In or around February 2015, Plaintiff Elsa Key was diagnosed with ovarian cancer, which developed in the State of West Virginia.  Plaintiff Elsa Key developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Elsa Key has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Elsa Key has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Elsa Key applied talcum powder in the States of Kentucky and West Virginia.

44.     Plaintiff Terri Koehler is a citizen of the City of LaPlace, State of Louisiana.  At all pertinent times, including from approximately 1993 until 2016, Plaintiff Terri Koehler purchased and applied talcum powder in the State of Louisiana.  In or around November of 2005, Plaintiff Terri Koehler was diagnosed with ovarian cancer, which developed in the State of Louisiana.  Plaintiff Terri Koehler developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Terri Koehler has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

loss of enjoyment of life, and Plaintiff Terri Koehler has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Terri Koehler applied talcum powder in the State of Louisiana.

45.     Plaintiff Debra Kyte is a citizen of the City of Winder, State of Georgia.  At all pertinent times, including from approximately 1987 through 2005, Plaintiff Debra Kyte purchased and applied talcum powder in the State of Georgia.  In or around August of 2005, Plaintiff Debra Kyte was diagnosed with ovarian cancer, which developed in the State of Georgia.  Plaintiff Debra Kyte developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Debra Kyte has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Debra Kyte has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Debra Kyte applied talcum powder in the State of Georgia.

46.     Plaintiff Lisa Littlefield an adult whose principle place of residence is in the City Vacaville, State of California.  She was the lawful daughter of the decedent Linda Hamel, at the time of her premature death on June 17, 2015.  The premature death of Linda Hamel was the direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to C.C.P. § 377.60, et seq., Plaintiff, on behalf of the class of persons entitled to recover

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

under the Wrongful Death Act, seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and  other damages as allowed by law.

47.     Plaintiff Remijio Longoria, Jr., an adult whose principal place of residence is in the City of Mercedes, State of Texas, brings this action individually and in his capacity as representative of the Estate of Alma Longoria. Plaintiff Remijio Longoria, Jr.is pursuing this action due to the wrongfully caused premature death of his mother, Alma Longoria, on behalf the Estate of Alma Longoria and all wrongful death beneficiaries/statutory distributees of Alma Longoria. The premature death of Alma Longoria was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Tex. Prac. & Rem. Code Ann. § 71.004, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

48.     Plaintiff Shirley Love is a citizen of the City of Ypsilanti, State of Michigan.  At all pertinent times, including from approximately 1973 to 1989, Plaintiff Shirley Love purchased and applied talcum powder in the State of Michigan.  In or around 2014, Plaintiff Shirley Love was diagnosed with ovarian cancer, which developed in the State of Michigan.  Plaintiff Shirley Love developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Shirley Love has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Shirley Love has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Shirley Love applied talcum powder in the State of Michigan.

49.     Plaintiff Rhonda Low is a citizen of the City of Indianapolis, State of Indiana.  At all pertinent times, including from childhood through 2015 Plaintiff Rhonda Low purchased and applied talcum powder in the State of Indiana.  In or around March 16, 2015, Plaintiff Rhonda Low was diagnosed with ovarian cancer, which developed in the State of Indiana.  Plaintiff Rhonda Low developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Rhonda Low has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rhonda Low has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Rhonda Low applied talcum powder in the State of Indiana.

50.     Plaintiff Dawn Lowe is a citizen of the City of Orlando, State of Florida.  At all pertinent times, including from approximately January 1971 to January 2013, Plaintiff Dawn Lowe purchased and applied talcum powder in the States of Florida and Tennessee.  In or around

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

January 2013, Plaintiff Dawn Lowe was diagnosed with ovarian cancer, which developed in the State of Tennessee.   Plaintiff Dawn Lowe developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.   As a direct and proximate result of these injuries, Plaintiff Dawn Lowe has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Dawn Lowe has otherwise been damaged in a personal and pecuniary nature.   At all pertinent times, Plaintiff Dawn Lowe applied talcum powder in the States of Florida and Tennessee.

51.     Plaintiff Bobby Lowman, an adult whose principal place of residence is in the City of Hickory, State of North Carolina, brings this action individually and in his capacity as representative of the Estate of Pamela Lowman. Plaintiff Pamela Lowman is pursuing this action due to the wrongfully caused premature death of his wife, Pamela Lowman, on behalf the Estate of Pamela Lowman all wrongful death beneficiaries/statutory distributees of Pamela Lowman. The premature death of Pamela Lowman was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to N.C. Gen. Stat. § 28A-18-2, *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

52.     Plaintiff John A. Macy is an adult whose principal place of residence is in the City of Warrensburg, State of Missouri, brings this action individually and in his capacity as a statutory beneficiary of Decedent Paula Macy.  Plaintiff John A. Macy is pursuing this action due to the wrongfully caused premature death of his wife, Paula Macy and on behalf of all wrongful death beneficiaries/statutory distributees of Paula Macy.  The premature death of Paula Macy was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis.  As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to RSMo § 537.080.  Plaintiff seeks damages for decedent's loss of future earnings, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

53.     Plaintiff Jerry Marshall, an adult whose principal place of residence is in the City of Mt. Judea, State of Arkansas, brings this action individually and in his capacity as representative of the Estate of Lacey Marshall. Plaintiff Jerry Marshall is pursuing this action due to the wrongfully caused premature death of his wife, Lacey Marshall, on behalf the Estate of Lacey Marshall and all wrongful death beneficiaries/statutory distributees of Lacey Marshall. The premature death of Lacey Marshall was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Ark. Code § 16-62-102,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

54.     Plaintiff Laura Martinez is a citizen of the City of Pearson, State of Georgia.   At all pertinent times, including from approximately April 1975 to July 2005, Laura Martinez purchased and applied talcum powder in the State of Georgia.   In or around February 2015, Plaintiff Laura Martinez was diagnosed with ovarian cancer, which developed in the State of Georgia.   Plaintiff Laura Martinez developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Laura Martinez has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Laura Martinez has otherwise been damaged in a personal and pecuniary nature.   At all pertinent times, Plaintiff Laura Martinez applied talcum powder in the State of Georgia.

55.     Plaintiff Marie Mattei is a citizen of the City of Plymouth Meeting, State of Pennsylvania.   At all pertinent times, including from approximately 1961-2015, Plaintiff Marie Mattei purchased and applied talcum powder in the State of Pennsylvania.   In or around December 2015, Plaintiff Marie Mattei was diagnosed with ovarian cancer, which developed in the State of Pennsylvania.   Plaintiff Marie Mattei developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Marie Mattei has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Marie Mattei has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Marie Mattei applied talcum powder in the State of Pennsylvania.

56.     Plaintiff Joyce McGonigle is a citizen of the City of Cedar, State of Michigan.  At all pertinent times, including from approximately 1963 to 2000, Plaintiff Joyce McGonigle purchased and applied talcum powder in the State of New Jersey.  In or around August 2008, Plaintiff Joyce McGonigle was diagnosed with ovarian cancer, which developed in the State of Florida.  Plaintiff Joyce McGonigle developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Joyce McGonigle has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Joyce McGonigle has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Joyce McGonigle applied talcum powder in the State of New Jersey.

57.     Plaintiff Linda Mettler is a citizen of the City of Chehalis, State of Washington. At all pertinent times, including from approximately 1963 to 1984, Plaintiff Linda Mettler purchased and applied talcum powder in the State of Washington.  In or around August 2006, Plaintiff Linda Mettler was diagnosed with ovarian cancer, which developed in the State

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

of Washington. Plaintiff Linda Mettler developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Linda Mettler has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Linda Mettler has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Linda Mettler applied talcum powder in the State of Washington.

58.     Plaintiff Mandy Myers is a citizen of the City of New Iberia, State of Louisiana. At all pertinent times, including from approximately 1991 to 2013, Plaintiff Mandy Myers purchased and applied talcum powder in the State of Louisiana.  In or around April 2014, Plaintiff Mandy Myers was diagnosed with ovarian cancer, which developed in the State of Louisiana.  Plaintiff Mandy Myers developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Mandy Myers has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Mandy Myers has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Mandy Myers applied talcum powder in the State of Louisiana.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

59.     Plaintiff Laurie Nunes is a citizen of the City of Mattapoisett, State of Massachusetts.  At all pertinent times, including from approximately October 1971 to 2013, Plaintiff Laurie Nunes purchased and applied talcum powder in the State of Massachusetts.  In or around November 2013, Plaintiff Laurie Nunes was diagnosed with ovarian cancer, which developed in the State of Massachusetts.  Plaintiff Laurie Nunes developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Laurie Nunes has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Laurie Nunes has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Laurie Nunes applied talcum powder in the State of Massachusetts.

60.     Plaintiff Cecilia Oglesby is a citizen of the City of Lafayette, State of Indiana. At all pertinent times, including from approximately 1963 through 2010 Plaintiff Cecilia Oglesby purchased and applied talcum powder in the State of Indiana and the State of Arkansas.  In or around January of 2015, Plaintiff Cecilia Oglesby was diagnosed with ovarian cancer, which developed in the State of Arkansas.  Plaintiff Cecilia Oglesby developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Cecilia Oglesby has incurred and will incur medical expenses in the future, has endured and will endure

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

pain and suffering and loss of enjoyment of life, and Plaintiff Cecilia Oglesby has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Cecilia Oglesby applied talcum powder in the State of Indiana and the State of Arkansas.

61.     Plaintiff Amber Ormond is a citizen of the City of Philadelphia, State of Pennsylvania.  At all pertinent times, including from approximately 1998-2013, Plaintiff Amber Ormond purchased and applied talcum powder in the State of Pennsylvania.  In or around April 2013, Plaintiff Amber Ormond was diagnosed with ovarian cancer, which developed in the State of Pennsylvania.   Plaintiff Amber Ormond developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Amber Ormond has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Amber Ormond has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Amber Ormond applied talcum powder in the State of Pennsylvania.

62.     Plaintiff Carol Patterson is a citizen of the City of Metairie, State of Indiana.  At all pertinent times, including from approximately 1996 through 2005 Plaintiff Carol Patterson purchased and applied talcum powder in the State of Louisiana.  In or around June of 2005, Plaintiff Carol Patterson was diagnosed with ovarian cancer, which developed in the State of Louisiana. Plaintiff Carol Patterson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development,

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Carol Patterson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carol Patterson has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Carol Patterson applied talcum powder in the State of Louisiana.

63.     Plaintiff Tammy S. Peck is a citizen of the City of San Diego, State of California.  At all pertinent times, including from approximately 1977 through March, 2013, Plaintiff Tammy S. Peck purchased and applied talcum powder in the State of California and the State of New Jersey.  Plaintiff Tammy S. Peck resided in the State of New Jersey from 1967 to 1996 and purchased and applied talcum powder during her residency.  She moved to the State of California in 1996 and purchased and applied talcum powder during her residency.  She has lived continuously in the State of California from 1996 until present.  In or around February, 2012, Plaintiff Tammy S. Peck was diagnosed with ovarian cancer, which developed in the State of California.  Plaintiff Tammy S. Peck developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Tammy S. Peck has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Tammy S. Peck has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Tammy S. Peck applied talcum powder in

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

the State of California from 1996 through March, 2013 with the exception of 1967 through 1996 when she resided in the State of New Jersey.

64.     Plaintiff Marcia Phillips is a citizen of the City of Mesa, State of Arizona.  At all pertinent times, including from approximately 1970 to 2015, Plaintiff Marcia Phillips purchased and applied talcum powder in the State of Arizona.  In or around August 2012, Plaintiff Marcia Phillips was diagnosed with ovarian cancer, which developed in the State of Arizona.  Plaintiff Marcia Phillips developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Marcia Phillips has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Marcia Phillips has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Marcia Phillips applied talcum powder in the State of Arizona.

65.     Plaintiff Michael Reinhart, is an adult whose principal place of residence is in the City of Collegeville, State of Pennsylvania, brings this action individually and in his capacity as representative of the Estate of Connie Reinhart, Deceased. Plaintiff Michael Reinhart is pursuing this action due to the wrongfully caused premature death of his wife, Connie Reinhart, on behalf the Estate of Connie Reinhart and all wrongful death beneficiaries/statutory distributees of Connie Reinhart. The premature death of Connie Reinhart was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to the Wrongful Death and/or Survival Statute of the State of Pennsylvania, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

66.    Plaintiff Pauline Roberts is a citizen of the City of Durham, State of North Carolina.  At all pertinent times, including from approximately 1964 to 1986, Plaintiff Pauline Roberts purchased and applied talcum powder in the States of Virginia and North Carolina.  In or around November 2013, Plaintiff Pauline Roberts was diagnosed with ovarian cancer, which developed in the State of North Carolina.  Plaintiff Pauline Roberts developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Pauline Roberts has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Pauline Roberts has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Pauline Roberts applied talcum powder in the States of Virginia and North Carolina.

67.    Plaintiff Sandra Semenas an adult whose principal place of residence is in the City of Edison, State of New Jersey, brings this action individually and in her capacity as representative of the Estate of Rosemary Semenas. Plaintiff Sandra Semenas is pursuing this action due to the wrongfully caused premature death of her wife, Rosemary Semenas, on behalf

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

the Estate of Rosemary Semenas and all wrongful death beneficiaries/statutory distributees of Rosemary Semenas. The premature death of Rosemary Semenas was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to N.J. Stat. Ann. § 2A:31-1, *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

68.     Plaintiff Reginald Small, an adult whose principal place of residence is in the City of Slidell, State of Louisiana, brings this action individually and in his capacity as representative of the Estate of Maxine Driver. Plaintiff Reginald Small is pursuing this action due to the wrongfully caused premature death of his wife, Maxine Driver, on behalf the Estate of Maxine Driver and all wrongful death beneficiaries/statutory distributees of Maxine Driver. The premature death of Maxine Driver was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Illinois Compiled Statutes 740 ILCS 180/1-2.2, 755 ILCS 5/27-6 and 750 ILCS 65/15, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

69.     Plaintiff Trevia Stephens is a citizen of the City of Chattanooga, State of Tennessee.  At all pertinent times, including from approximately 1980 to 2006, Plaintiff Trevia Stephens purchased and applied talcum powder in the State of Tennessee.  In or around March 2016, Plaintiff Trevia Stephens was diagnosed with ovarian cancer, which developed in the State of Tennessee.  Plaintiff Trevia Stephens developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Trevia Stephens has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Trevia Stephens has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Trevia Stephens applied talcum powder in the State of Tennessee.

70.     Plaintiff Carolyn Suska is a citizen of the City of Bowlus, State of Minnesota. At all pertinent times, including from approximately 1974 to 2000, Plaintiff Carolyn Suska purchased and applied talcum powder in the State of Minnesota. In or around April 2011, Plaintiff Carolyn Suska was diagnosed with ovarian cancer, which developed in the State of Minnesota. Plaintiff Carolyn Suska developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

As a direct and proximate result of these injuries, Plaintiff Carolyn Suska has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carolyn Suska has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Carolyn Suska applied talcum powder in the State of Minnesota.

71.     Plaintiff Hayley Tennyson is a citizen of the City of Columbus, State of Georgia. At all pertinent times, including from approximately 1987 to 2013, Plaintiff Hayley Tennyson purchased and applied talcum powder in the State of Georgia. In or around February 2011, Plaintiff Hayley Tennyson was diagnosed with ovarian cancer, which developed in the State of Georgia. Plaintiff Hayley Tennyson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Hayley Tennyson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Hayley Tennyson has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Hayley Tennyson applied talcum powder in the State of Georgia.

72.     Plaintiff Dirk Thomas, an adult whose principal place of residence is in the City of Decatur, State of Georgia, brings this action individually and in his capacity as representative of the Estate of Linda Thomas. Plaintiff Linda Thomas is pursuing this action due to the wrongfully caused premature death of his wife, Linda Thomas, on behalf the Estate of Linda Thomas and all wrongful death beneficiaries/statutory distributees of Linda Thomas. The

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

premature death of Linda Thomas was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Ga. Code Ann. § 51-4-5, *et seq.*, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

73.     Plaintiff Myra Thompson, is an adult whose principal place of residence is in the City of Lubbock, State of Texas, brings this action individually and in her capacity as representative of the Estate of Verna Thompson, Deceased. Plaintiff Myra Thompson is pursuing this action due to the wrongfully caused premature death of her sister, Verna Thompson, on behalf the Estate of Verna Thompson and all wrongful death beneficiaries/statutory distributees of Verna Thompson. The premature death of Verna Thompson was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to the Wrongful Death and/or Survival Statute of the State of Texas, Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, and other damages as allowed by law.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

74.     Plaintiff Sandra Vannoy is a citizen of the City of Madisonville, State of Kentucky.  At all pertinent times, including from approximately 1967 through January of 2016, Plaintiff Sandra Vannoy purchased and applied talcum powder in the State of Kentucky.  In or around February, 2015, Plaintiff Sandra Vannoy was diagnosed with ovarian cancer, which developed in the State of Kentucky.  Plaintiff Sandra Vannoy developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Sandra Vannoy has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sandra Vannoy has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Sandra Vannoy applied talcum powder in the State of Kentucky.

75.     Plaintiff Michael Varvil, an adult whose principal place of residence is in the City of Brookland, State of Arkansas, brings this action individually and in his capacity as Administrator of the Estate of Constance Varvil. Plaintiff Michael Varvil is pursuing this action due to the wrongfully caused premature death of his wife, Constance Varvil, on behalf the Estate of Constance Varvil and all wrongful death beneficiaries/statutory distributees of Constance Varvil. The premature death of Constance Varvil was the direct and proximate result of her application of talcum powder and subsequent ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Ark.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Code Ann. § 16-62-102(a)(1), Plaintiff seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, pain and suffering endured by decedent prior to premature death, medical, funeral and burial expenses, loss of services and support, and other damages as allowed by law.

76.     Plaintiff Lesa Wilburn is a citizen of the City of Barbourville, State of Kentucky. At all pertinent times, including from approximately 1970 to 2016, Plaintiff Lesa Wilburn purchased and applied talcum powder in the States of Kentucky, Georgia, and Tennessee.  In or around January 2016, Plaintiff Lesa Wilburn was diagnosed with ovarian cancer, which developed in the State of Kentucky.  Plaintiff Lesa Wilburn developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder.  As a direct and proximate result of these injuries, Plaintiff Lesa Wilburn has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lesa Wilburn has otherwise been damaged in a personal and pecuniary nature.  At all pertinent times, Plaintiff Lesa Wilburn applied talcum powder in the States of Kentucky, Georgia, and Tennessee.

77.     Plaintiff Penny Young is a citizen of the City of Frenchtown, State of Montana.  At all pertinent times, including from approximately 2003 to 2014, Plaintiff Penny Young purchased and applied talcum powder in the State of Montana.  In or around November 2013, Plaintiff Penny Young was diagnosed with ovarian cancer, which developed in the State of Montana.  Plaintiff Penny Young developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder. As a direct and proximate result of these injuries, Plaintiff Penny Young has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Penny Young has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Penny Young applied talcum powder in the State of Montana.

78.     Defendant, Johnson & Johnson, is a New Jersey corporation with its principal place of business in the State of New Jersey.

79.     At all relevant times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all relevant times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

80.     Defendant Johnson and Johnson Consumer Incorporated f/k/a Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey.

81.     At all relevant times, Johnson and Johnson Consumer Incorporated[1] was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all relevant times, Johnson and Johnson Consumer Incorporated regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

---

[1] All allegations regarding actions taken by Johnson & Johnson Consumer, Inc. also include actions taken while that entity was known as Johnson & Johnson Consumer Companies, Inc.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

82.     Defendant Johnson & Johnson formulated, manufactured, marketed, tested, promoted, sold and distributed the PRODUCTS prior to Johnson & Johnson Consumer, Inc. f/k/a Johnson & Johnson Consumer Companies, Inc. coming into existence.

83.     Defendant Imerys Talc America, Inc., f/k/a Luzenac America, Inc. is a Delaware corporation with its principal place of business in the State of California.

84.     At all relevant times, Imerys Talc America, Inc., f/k/a Luzenac America, Inc. (hereinafter described as "Imerys Talc" or "Imerys Talc America, Inc."), has been in the business of mining and distributing talcum powder for use in talcum powder based products, including the PRODUCTS. Imerys Talc is the successor or continuation of Luzenac America, Inc., and Imerys Talc America, Inc. is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.

85.     At all relevant times, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of PRODUCTS, and introduced such products into interstate commerce with knowledge and intent that such products be sold in all States, including the States of Alabama, Arkansas, Arizona, California, Colorado, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, and Wyoming.

## **<u>VENUE</u>**

86. RSMo § 508.010, Missouri's general venue statute provides:

> Notwithstanding any other provision of law, in all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue shall be in the county where the plaintiff was first injured by the wrongful acts or negligent conduct alleged in the action.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

RSMo § 508.010.4

87.     Plaintiff Annie Jones was living in St. Louis City when she first used the PRODUCTS, and therefore was "first injured by the wrongful acts or negligent conduct alleged" in this action in the City of St. Louis, Missouri. Therefore, venue is proper pursuant to RSMo § 508.010.4.

88.     Venue is further proper in this Court pursuant to RSMo § 508.010.4 because Plaintiff Annie Jones at all relevant times, purchased, used, and was exposed to the Products in the City of St. Louis, Missouri.

## ALLEGATIONS COMMON TO ALL COUNTS

89.     Talc is a magnesium trisilicate that is mined from the earth.  Talc is an inorganic mineral. The Defendant, Imerys Talc America, Inc., f/k/a Luzanec America, Inc. mined the talc contained in the PRODUCTS.

90.     Talc is the main substance in talcum powders.   The Johnson & Johnson Defendants manufactured the PRODUCTS. The PRODUCTS are composed almost entirely of talc.

91.     At all relevant times, a feasible alternative to the PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects.  Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness as the PRODUCTS.

92.     At all relevant times, Defendant Imerys Talc[2] mined the talc contained in the PRODUCTS.

---

[2] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

93.     At all relevant times, Imerys Talc continually advertised and marketed talc as safe for human use.

94.     At all relevant times, Imerys Talc supplied its customers, including the Johnson & Johnson Defendants, with Material Safety Data Sheets ("MSDS") for talc, which were supposed to convey adequate health and warning information to its customers.

95.     Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity.  During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as a symbol of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" to keep skin feeling dry and comfortable, and "clinically proven gentle and mild."  The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors.  The bottle of "Johnson's Baby Powder" specifically targets women, stating: "For you, use every day to help feel soft, fresh, and comfortable."[3]

96.     At all relevant times, the Johnson & Johnson Defendants advertised and marketed their "Shower to Shower" product as safe for use by women as evidenced in its slogan, "A sprinkle a day keeps odor away," and through advertisements such as: "Your body perspires in more places than just under your arms.  Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."

97.     Plaintiffs used the PRODUCTS to dust their perineum for feminine hygiene purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

---

[3] Retailer Wal-Mart lists the labels for Johnson's Baby Powder, http://www.walmart.com/ip/Johnson-s-Baby-Powder-22-oz/10294007.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

98.     Upon information and belief, in 1971, the first study was conducted that suggested an association between talc and ovarian cancer.  This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

99.     Upon information and belief, in 1982, the first epidemiologic study was performed on talc powder use in the female genital area.  That study was conducted by Dr. Daniel Cramer and others.  This study found a ninety-two percent increased risk of ovarian cancer with women who reported genital talc use.  Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study.  Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

100.    Upon information and belief, since approximately 1982, there have been approximately twenty-two additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk of ovarian cancer associated with genital talc use in women.

101.    Upon information and belief, in or about 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestos form talc and found clear evidence of carcinogenic activity.  Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.[4]

---

[4] Inhalation Toxicology Research Institute Annual Report, 1993 – 1994, https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=5&ved=0CEEQFjAE&url=http%3A%2F%2Fwww.dtic.mil%2Fget-tr-doc%2Fpdf%3FAD%3DADA292037&ei=XX4IVMfxPIblsASfyIKwCA&usg=AFQjCNGnPtuTJc4YRHp3v0VFPJlOV2yH2w&sig2=WTznSlZK9GojkDadkub0Sw&bvm=bv.74649129,d.cWc&cad=rja.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

102.   Upon information and belief, in response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA), now known as the PCPC, formed the Talc Interested Party Task Force (TIPTF).  Johnson & Johnson, Inc., Johnson and Johnson Consumer Incorporated, and Luzenac—now known as Imerys Talc— were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of TIPTF was to pool financial resources of these companies in order to collectively defend talc use at all costs and to prevent regulation of any type over this industry. TIPTF hired scientists to perform biased research regarding the safety of talc. TIPTF members, including Johnson & Johnson and Luzenac, then edited these scientific reports hired by this group prior to the submissions of these scientific reports to governmental agencies. In addition, members of TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies regarding talc. These activities were conducted by these companies and organizations over the past four decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc and its association to ovarian cancer.

103.   Upon information and belief, on or about November 19, 1994, the Cancer Prevention Coalition sent a letter to then Johnson & Johnson C.E.O. Ralph Larsen, urging him to substitute cornstarch for talcum powder products and to label its products with a warning on cancer risks.[5]

104.   Upon information and belief, in or about 1996, the FDA requested that the condom industry stop dusting condoms with talc due to the health concerns that studies linked

---

[5] Petition Seeking a Cancer Warning on Cosmetic Talc Products, May 13, 2008
http://www.preventcancer.com/publications/pdf/FINAL_CitPetTalcOvCa_may138.pdf.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

talc to ovarian cancer.  Upon this request, all U.S. manufacturers discontinued the use of talc in its condom manufacturing process to reduce the potential health hazards to women.[6]

105.    Upon information and belief, in or about 1990, the U.S. Food and Drug Administration (FDA) asked manufacturers to voluntarily stop putting talc on surgical gloves because mounting scientific evidence showed that it caused adhesions in surgical patients.[7]

106.    Upon information and belief, in or about February 2006, the International Agency for Research on Cancer (IARC), the specialized cancer agency of the World Health Organization, published a paper whereby they classified perineal use of talc-based body powder as a "Group 2B" human carcinogen.[8]  IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women who used talc in perineal areas.  IARC determined that between 16-52% of women worldwide used talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%.

107.    Upon information and belief, in or about 2006, the Canadian government, under The Hazardous Products Act and associated Controlled Products Regulations, classified talc as a "D2A," "very toxic," "cancer-causing" substance under its Workplace Hazardous Materials Information System (WHMIS).  Asbestos is also classified as "D2A."

108.    Upon information and belief, in or about 2006, Defendant Imerys Talc began placing a warning on the MSDS it provided to the Johnson & Johnson Defendants regarding the talc it sold to them for use in the PRODUCTS.  The MSDSs not only provided the warning

---

[6] "A Women's Campaign Against Talc on Condoms," *Philly*.com, http://articles.philly.com/1996-01-08/living/25652370_1_talc-condoms-ovarian-cancer.
[7] *Id.*
[8] IARC, "Perineal use of talc-based body powder (Group 2B)," *available at* http://monographs.iarc.fr/ENG/Monographs/PDFs/93-talc.pdf.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's D2A classification of talc.

109.    In 2008, the Cancer Prevention Coalition submitted a "Petition Seeking a Cancer Warning on Cosmetic Talc Products" to the FDA.   The petition requested that the FDA immediately require cosmetic talcum powder products to bear labels with a prominent warning that frequent talc application in the female genital area is responsible for major risks of ovarian cancer.[9]

110.    In 2013, Cancer Prevention Research published a study that showed that women who used talcum powder in their groin area had a 20 to 30 percent greater risk of developing ovarian cancer than women who did not use talc products in that area.[10]

111.    Presently, the National Cancer Institute[11] and the American Cancer Society[12] list genital talc use as a "risk factor" for ovarian cancer.

112.    The Gilda Radner Familial Ovarian Cancer Registry, Roswell Park Center Institute, and the Department of Gynecologic Oncology University of Vermont publish a pamphlet entitled, "Myths & Facts about ovarian cancer: What you need to know." In this pamphlet, under "known" risk factors for ovarian cancer, it lists: "Use of Talc (Baby Powder) in the Genital Area."[13]

---

[9] Cancer Prevention Coalition "Petition Seeking a Cancer Warning on Cosmetic Talc Products" submitted to the FDA on May 13, 2008, http://www.organicconsumers.org/articles/article_12517.cfm

[10] "Genital powder use and risk of ovarian cancer: a pooled analysis of 8,525 cases and 9,859 controls," *Cancer Prevention Research*, June 2013, http://cancerpreventionresearch.aacrjournals.org/content/early/2013/06/12/1940-6207.CAPR-13-0037.short.

[11] National Cancer Institute, Ovarian Cancer Prevention, http://www.cancer.gov/cancertopics/pdq/prevention/ovarian/Patient/page3

[12] American Cancer Society, Risk Factors for Ovarian Cancer, http://www.cancer.org/cancer/ovariancancer/detailedguide/ovarian-cancer-risk-factors

[13] Myths and Facts About Ovarian Cancer, http://imaging.ubmmedica.com/cancernetwork/forpatients/pdfs/7_M&F%20Ovarian%20Cancer.pdf.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

113.    The Defendants had a duty to know and warn about the hazards associated with the use of the PRODUCTS.

114.    The Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the use of its PRODUCTS.

115.    In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding talc.

116.    As a direct and proximate result of the Defendants' calculation and reprehensible conduct, Plaintiffs were injured and suffered damages, namely ovarian cancer, which required surgeries and treatments.

## FEDERAL STANDARDS AND REQUIREMENTS

117.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully set forth herein.

118.    At all relevant times, Defendants had the obligation to comply with federal standards and regulations in the manufacture, design, marketing, branding, labeling, distribution, and sale of the PRODUCTS.

119.    Defendants, each individually, *in solido*, and/or jointly, violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*

120.    Defendants have or may have failed to comply with federal standards and requirements governing the manufacture, design, marketing, branding, and sale of the PRODUCTS including, but not limited to, the following violations of sections and subsections of the United States Code and the Code of Federal Regulations:

        a.    THE PRODUCTS are adulterated in violation of 21 U.S.C. § 361 because, among other things, they contain a poisonous or deleterious substance

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

which may render them injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual.

b.  The PRODUCTS are misbranded in violation of 21 U.S.C. § 362 because, among other things, their labeling is false or misleading.

c.  The PRODUCTS are misbranded in violation 21 U.S.C. § 362 because words, statements, or other information required by or under authority of 21 U.S.C. § 362 are not prominently placed thereon with such conspicuousness and in such terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

d.  The PRODUCTS are misbranded in violation of 21 C.F.R. § 701.1 because they contain false or misleading representations that they are safe for daily application to all parts of the female body.

e.  The PRODUCTS do not bear a warning statement, in violation of 21 C.F.R. § 740.1, to prevent a health hazard that may be associated with the PRODUCTS, namely that the PRODUCTS may cause ovarian cancer or a heightened risk of ovarian cancer when applied to the perineal area.

f.  The PRODUCTS do not prominently and conspicuously bear a warning statement, in violation of 21 C.F.R. § 740.2, as to the risk of ovarian cancer caused by the use of the PRODUCTS when applied to the perineal area, in such terms and design that it is likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

g.  The PRODUCTS, in violation of 21 C.F.R. § 740.10, do not conspicuously state on their principal display panel that the safety of the PRODUCTS have not been determined and/or that the safety of the PRODUCTS' principal ingredients have not been determined.

## COUNT ONE – VIOLATION OF MISSOURI MERCHANDIZING PRACTICE ACT, § 407.020 *et seq.* (Johnson & Johnson Defendants)

121.   Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully set forth herein.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

122.    At all relevant times, the Johnson & Johnson Defendants knew or should have known of the unreasonably dangerous and carcinogenic nature of talc, especially when applied in a women's perineal region.

123.    At all relevant times, the Johnson & Johnson Defendants, through their labeling, advertisements, public representations and marketing of the PRODUCTS, intentionally used deception, fraud, false pretenses, false promises, misrepresentations and unfair trade practices in order to mislead consumers that the PRODUCTS were safe for use in the female perineal area.

124.    The labeling and advertisements for the PRODUCTS include, but are not limited to, the following statements: "For you, use every day to help feel soft, fresh, and comfortable;"[14] "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."[15]

125.    In particular, the Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and suggested that women use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

126.    At all relevant times, the Johnson & Johnson Defendants also engaged in the concealment, suppression and/or omission of material facts in connection with the sale and/or advertisement of the PRODUCTS in trade or commerce. In particular, the Johnson & Johnson Defendants failed to disclose to the public that the PRODUCTS were unsafe and posed serious health hazards, particularly when used in the perineal areas of women. The first study that suggested an association between talc and ovarian cancer was conducted in 1971, and studies

---

[14] Retailer Wal-Mart lists the labels for Johnson's Baby Powder, http://www.walmart.com/ip/Johnson-s-Baby-Powder-22-oz/10294007.
[15] Johnson & Johnson Shower to Shower website, http://showertoshower.com/the-power-of-powder.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

confirming this association have been and continue to be conducted. The Johnson & Johnson Defendants were aware of the hazardous risks posed by the PRODUCTS and yet failed to inform the public of these risks through their advertisements, labeling, or other means available to them. The Johnson & Johnson Defendants' failure to state material facts about their PRODUCTS constitutes a violation of V.A.M.S. § 407.020.

127.    At all relevant times, Plaintiffs were deceived by Defendants' intentional misrepresentations and omissions, including by the orchestrated claims made on or in television commercials, advertising materials, websites, and on product labels and packaging regarding the usage and safety of the PRODUCTS.

128.    At all relevant times, Plaintiffs acted in reasonable reliance upon the Johnson & Johnson Defendants' unlawful trade practices, and had the Johnson & Johnson Defendants not engaged in the deceptive conduct described herein, Plaintiffs would not have purchased and/or received the PRODUCTS.

129.    As a direct and proximate result of Johnson & Johnson Defendants' unlawful trade practices, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiffs pray for judgment against Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TWO – STRICT LIABILITY FOR FAILURE TO WARN
### (Imerys Talc)

130.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully set forth herein.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

131.    At all relevant times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants with full knowledge that the Johnson & Johnson Defendants were then packaging the talc and selling to consumers as the PRODUCTS and consumers of the PRODUCTS were using it to powder their perineal regions.

132.    At all relevant times, by mining talc and supplying that talc to the Johnson & Johnson Defendants for use in the PRODUCTS, Imerys Talc was knowingly an integral part of the overall manufacture, design, and production of the PRODUCTS and their introduction into the stream of interstate commerce.

133.    At all relevant times, Imerys Talc knew or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when applied to a woman's perineal regions, and it knew or should have known that Johnson & Johnson was not warning its consumers of this danger.

134.    At all relevant times, Imerys Talc knew or should have known that the use of the PRODUCTS significantly increase the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

135.    At all relevant times, the PRODUCTS were defective and unreasonably dangerous when used in a reasonably foreseeable manner because, despite Imerys Talc's knowledge that the PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer, Imerys Talc failed to provide adequate warning and/or instruction to consumers, including Plaintiff, regarding the increased risk of ovarian cancer associated with the use of the PRODUCTS when applied to the perineal area.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

136.    Had Plaintiffs received warning or instruction regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiffs would not have used the PRODUCTS in this manner.

137.    Due to the absence of any warning or instruction by the Defendants as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiffs were unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

138.    As a direct and proximate result of Imerys Talc's failure to warn Plaintiffs of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiffs pray for judgment against Defendant Imerys Talc in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT THREE – STRICT LIABILITY FOR FAILURE TO WARN
### (Johnson & Johnson Defendants)

139.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

140.    At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing, and otherwise introducing into the stream of interstate commerce, the PRODUCTS.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

141.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the use of the PRODUCTS in the female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

142.    At all relevant times, the PRODUCTS, manufactured and supplied by the Johnson & Johnson Defendants, were defective and unreasonably dangerous because, despite the Johnson & Johnson Defendants' knowledge that its PRODUCTS were carcinogenic and could lead to an increased risk of ovarian cancer when applied to the female perineal area, a reasonably foreseeable use of the PRODUCTS, the Johnson & Johnson Defendants failed to provide adequate warning or instruction to consumers, including Plaintiffs, regarding the increased risk of ovarian cancer when the PRODUCTS are applied to the female perineal area.

143.    At all relevant times, Plaintiffs used the PRODUCTS to powder their perineal areas, a use that was reasonably foreseeable and for which the PRODUCTS were supplied.

144.    Had Plaintiffs received warning and/or instruction from the Johnson & Johnson Defendants regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiffs would not have used the PRODUCTS in this manner.

145.    Due to the absence of any warning or instruction by the Johnson & Johnson Defendants as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiffs were unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

146.    As a direct and proximate result of Johnson & Johnson Defenadnts' failure to warn Plaintiffs of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite their actual knowledge of this material fact, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT FOUR – STRICT LIABILITY FOR DEFECTIVE MANUFACTURE AND DESIGN (Imerys Talc)

147.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

148.    At all relevant times, Defendant Imerys Talc was engaged in the business of mining and distributing talcum to Johnson & Johnson Defendants for use in the PRODUCTS, and they were knowingly an integral part of the overall manufacture, design, and production of the PRODUCTS and their introduction into the stream of interstate commerce.

149.    At all relevant times, the PRODUCTS were expected to and did reach Plaintiffs without a substantial change in their condition.

150.    At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by Imerys Talc in that, when Imerys Talc supplied its talc product to Johnson & Johnson with full knowledge that Johnson & Johnson would use its talc in formulating the PRODUCTS and that the talc would be the primary ingredient in the PRODUCTS, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

151.   At all relevant times, the PRODUCTS were defectively manufactured and designed by Imerys Talc in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

152.   At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

153.   As a direct and proximate result of the defective design and manufacture of the PRODUCTS, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiffs pray for judgment against Defendant Imerys Talc in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT FIVE – STRICT LIABILITY FOR DEFECTIVE MANUFACTURE AND DESIGN
### (Johnson & Johnson Defendants)

154.   Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

155.   At all relevant times, the Johnson & Johnson Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the PRODUCTS into the stream of interstate commerce, which they sold and distributed throughout the United States.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

156.    At all relevant times, the PRODUCTS were expected to and did reach Plaintiff without a substantial change in condition.

157.    At all relevant times, the PRODUCTS were defectively and improperly manufactured and designed by the Johnson & Johnson Defendants in that, when the PRODUCTS left the hands of the Johnson & Johnson Defendants, the foreseeable risks of the PRODUCTS far outweighed the benefits associated with their design and formulation.

158.    At all relevant times, the PRODUCTS were defectively manufactured and designed by the Johnson & Johnson Defendants in that their design and formulation is more dangerous than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

159.    At all relevant times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other products on the market used for the same therapeutic purpose.

160.    At all relevant times, a reasonable and safer alternative design existed, which could have feasibly been employed by the Johnson & Johnson Defendants to manufacture a product with the same therapeutic purpose as the PRODUCTS.  Despite knowledge of this reasonable and safer alternative design, the Johnson & Johnson Defendants failed to alter the PRODUCTS' design and formulation.  The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

161.    As a direct and proximate result of the defective design and manufacture of the PRODUCTS, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

WHEREFORE, Plaintiffs pray for judgment against Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00 together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT SIX - NEGLIGENCE
### (Imerys Talc)

162.   Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

163.   At all relevant times, Imerys Talc had a duty to exercise reasonable care to consumers, including Plaintiffs herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the PRODUCTS.

164.   At all relevant times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew was then being packaged and sold to consumers as the PRODUCTS by the Johnson and Johnson Defendants. Further, Imerys Talc knew that consumers of the PRODUCTS were using it to powder their perineal regions.

165.   At all relevant times, Imerys Talc knew or should have known that the use of the PRODUCTS in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1971.

166.   At all relevant times, Imerys Talc knew that Johnson & Johnson Defendants were not providing warnings to consumers of the PRODUCTS of the risk of ovarian cancer posed by talc contained therein.

167.   At all relevant times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants. Imerys Talc possessed information on the carcinogenic properties of talc, including its risk of causing ovarian cancer. Imerys Talc was negligent because it knew that the

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

talc they provided to Johnson & Johnson Defendants would be used in the PRODUCTS, but they did not adequately take steps to ensure that ultimate consumers of the PRODUCTS, including Plaintiffs, received the information that Imerys Talc possessed on the carcinogenic properties of talc.

168.    As a direct and proximate result of Imerys Talc's negligence, Plaintiffs developed ovarian cancer and have been injured catastrophically and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and economic damages.

WHEREFORE, Plaintiffs pray for judgment against Imerys Talc in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT SEVEN –NEGLIGENCE
### (Johnson & Johnson Defendants)

169.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

170.    At all relevant times, the Johnson & Johnson Defendants breached their duty to Plaintiffs and were otherwise negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

a.  In failing to warn Plaintiffs of the hazards associated with the use of the PRODUCTS;

b.  In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

    c.   In failing to properly test the PRODUCTS to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

    d.   In failing to inform ultimate users, such as Plaintiffs, as to the safe and proper methods of handling and using the PRODUCTS;

    e.   In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

    f.   In failing to instruct the ultimate users, such as Plaintiffs, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

    g.   In failing to inform the public in general and the Plaintiffs in particular of the known dangers of using the PRODUCTS for dusting the perineum;

    h.   In failing to advise users how to prevent or reduce exposure that caused an increased risk for ovarian cancer;

    i.   In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary;

    j.   In failing to act like a reasonably prudent company under similar circumstances;

    k.   In failing to use a safer alternative to talc in the PRODUCTS, such as cornstarch.

Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiffs.

171.   At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

172.   As a direct and proximate result of the Johnson & Johnson Defendants' negligence, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. As a direct and proximate result, Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT EIGHT – BREACH OF EXPRESS WARRANTY
### (Johnson & Johnson Defendants)

173.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

174.    At all relevant times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

175.    At all relevant times, the Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in their perineal area.

176.    At all relevant times, the PRODUCTS did not conform to these express representations because they cause serious injury, including ovarian cancer, when used by women in the perineal area.

177.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

## COUNT NINE– BREACH OF IMPLIED WARRANTIES
### (Johnson & Johnson Defendants)

178.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

179.    At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Johnson & Johnson Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the perineal area. With this knowledge, they impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

180.    Defendants breached their implied warranties of the PRODUCTS sold to Plaintiffs because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

181.    As a direct and proximate result of the Johnson & Johnson Defendants' breach of implied warranties, Plaintiffs purchased and used the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer. As a result, Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TEN – CIVIL CONSPIRACY
### (All Defendants)

182.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

183.    Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiffs' injuries, diseases, and/or illnesses by exposing the Plaintiffs to harmful and dangerous PRODUCTS. Defendants further knowingly agreed, contrived, confederated and conspired to deprive the Plaintiffs of the opportunity of informed free choice as to whether to use the PRODUCTS or to expose themselves to the stated dangers. Defendants committed the wrongs as described herein by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the PRODUCTS.

184.    In furtherance of said conspiracies, Defendants performed the following overt acts:

a. For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports that clearly indicated that use of their by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:
   i. Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Plaintiffs, as described above; In addition, on July 27, 2005, Defendants, as part of the TIPTF, corresponded about and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

   ii. Instituted a "defense strategy" through the TIPTF to defend talc at all costs. In furtherance of this defense strategy, Defendants, through the TIPTF, used their influence over the National Toxicology Program ("NTP') Subcommittee and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th Report on Carcinogens ("RoC");

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

    iii.  Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, Defendants, through the TIPTF, collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

   c.  By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce and did induce the Plaintiffs to rely upon these false and fraudulent representations, omissions and concealments, and to continue to expose themselves to the dangers inherent in the use of and exposure to the PRODUCTS.

185. Plaintiffs reasonably and in good faith relied upon the fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the PRODUCTS.

186. As a direct, foreseeable and proximate result of the Defendants' conspiracy, Plaintiffs purchased and used the PRODUCTS in the perineal areas, which directly and proximately caused each Plaintiff to develop ovarian cancer. Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT ELEVEN – CONCERT OF ACTION
### (All Defendants)

187. Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

188.    At all relevant times, Imerys Talc and the Johnson & Johnson Defendants knew that the PRODUCTS should contain warnings about the risk of ovarian cancer when women used the PRODUCTS to powder the perineal region, but they purposefully suppressed this information and omitted warnings from the PRODUCTS. They did so to maintain sales and profits of the Johnson & Johnson Defendants and Imerys Talc.

189.    As a direct, foreseeable and proximate result of the Defendants' concert of action, Plaintiffs purchased and used the PRODUCTS in their perineal areas. As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT TWELVE – FRAUD
### (Johnson & Johnson Defendants)

190.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

191.    At all relevant times, the Johnson & Johnson Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers and users, including Plaintiffs.

192.    At all relevant times, the Johnson & Johnson Defendants misrepresented and/or concealed material facts concerning the PRODUCTS to consumers, including the Plaintiffs, with knowledge of the falsity of their misrepresentations.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

193.    At all relevant times, upon information and belief, the misrepresentations and concealments concerning the PRODUCTS made by the Johnson & Johnson Defendants include, but are not limited to the following:

   a.  The Johnson & Johnson Defendants falsely labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable," "a sprinkle a day keeps the odor away," "your body perspires in more places than just under your arms," "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body."

   b.  The Johnson & Johnson Defendants falsely advertised the PRODUCT SHOWER to SHOWER to be applied "all over," and in particular, urges women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

   c.  The Johnson & Johnson Defendants, through the advertisements described above, knowingly misrepresented to Plaintiff and the public that the PRODUCTS were safe for use all over the body, including the perineal areas of women.

   d.  The Johnson & Johnson Defendants intentionally failed to disclose that talc and the associated PRODUCTS, when used in the perineal area, increase the risk of ovarian cancer.

   e.  The Johnson & Johnson Defendants intentionally failed to include adequate warnings with the PRODUCTS regarding the potential and actual risks of using the PRODUCTS in the perineal area on women and the nature, scope, severity, and duration of any serious injuries resulting therefrom.[16]

   f.  Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

---

[16] Household Products Database, Label for Johnson's Baby Powder, Original, http://householdproducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

194.    At all relevant times, the Johnson & Johnson Defendants actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiffs, and with the intent that the consumers would purchase and use the PRODUCTS in the female perineal area.

195.    At all relevant times, the consuming public, including Plaintiffs, would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of the risks associated with the use of the PRODUCTS in the perineal area.

196.    At all relevant times, Plaintiffs relied on the Johnson & Johnson Defendants' misrepresentations concerning the safety of the PRODUCTS when purchasing the PRODUCTS and using them in her perineal area, and her reliance was reasonable and justified.

197.    As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' fraudulent conduct, Plaintiffs purchased and used the PRODUCTS in their perineal areas. As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severely, in a fair and reasonable sum in excess of $25,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT THIRTEEN – NEGLIGENT MISREPRESENTATION
### (All Defendants)

198.    As a direct, foreseeable and proximate result of the Johnson & Johnson Defendants' fraudulent conduct, Plaintiffs purchased and used the PRODUCTS in their perineal areas. As a direct and proximate result of such use, each Plaintiff developed ovarian cancer, and Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

199.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiffs and the public that the PRODUCTS had been tested and found to be safe and effective for use in the perineal area. However, the representations made by Defendants, in fact, were false.

200.    Defendants failed to exercise ordinary care in the representations concerning the PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

201.    Defendants breached their duty in representing that the PRODUCTS were safe for use in the perineal areas of women.

202.    At all relevant times, upon information and belief, the misrepresentations, omissions and concealments concerning the PRODUCTS made by the Defendants include, but are not limited to the following:

    a.  The Johnson & Johnson Defendants labeled and advertised the PRODUCTS in the following ways, among others: "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day; and "SHOWER to SHOWER can be used all over your body."

    b.  The Johnson & Johnson Defendants advertised the product SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction.  Apply after a bikini wax to help reduce irritation and discomfort."

    c.  Defendants, through the advertisements described above, among others, misrepresented to consumers, including the Plaintiffs, that the PRODUCTS were safe for use all over the body, including the female perineal area.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

d.  Despite actual knowledge of the health risks of the PRODUCTS, the Defendants failed to disclose to the consumers and the Plaintiffs, through adequate warnings, representations, labeling, or otherwise, that the PRODUCTS were inherently dangerous and carcinogenic in nature, which poses serious health risks to consumers.

e.  Despite actual knowledge that the use of the PRODUCTS in the perineal area created a significantly increased risk of ovarian cancer, the Defendants failed to disclose to consumers and the Plaintiff, through adequate warnings, representations, labeling, or otherwise, that material fact.

f.  Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, the Johnson & Johnson Defendants falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

203.    At all relevant times, Defendants failed to exercise reasonable care in ascertaining or sharing information regarding the safe use of PRODUCTS, failed to disclose facts indicating that the PRODUCTS were inherently dangerous and carcinogenic in nature, and otherwise failed to exercise reasonable care in communicating the information concerning the PRODUCTS to Plaintiff and/or concealed relevant facts that were known to them.

204.    At all relevant times, Plaintiffs were not aware of the falsity of the foregoing misrepresentations, nor was she aware that material facts concerning talc and the PRODUCTS had been concealed or omitted.  In reasonable reliance upon the Johnson & Johnson Defendants' misrepresentations and/or omissions, Plaintiffs were induced to and did purchase the PRODUCTS and did use the PRODUCTS on her perineal area.  If the Defendants had disclosed true and accurate material facts concerning the risks of the use of the PRODUCTS, in particular the risk of developing ovarian cancer from using the PRODUCTS in the female perineal area, Plaintiffs would not have purchased and/or received the PRODUCTS and/or used the PRODUCTS in that manner.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

205.    Plaintiffs' reliance upon the Defendants' misrepresentations and omissions was justified and reasonable because, among other reasons, those misrepresentations and omissions were made by individuals and entities who were in a position to know the material facts concerning the PRODUCTS and the association between the PRODUCTS and the incidence of ovarian cancer, while Plaintiff was not in a position to know these material facts, and because the Johnson & Johnson Defendants failed to warn or otherwise provide notice to the consuming public as to the risks of the PRODUCTS, thereby inducing Plaintiff to use the PRODUCTS in lieu of safer alternatives and in ways that created unreasonably dangerous risks to her health. At all relevant times, the Defendants' corporate officers, directors, and/or managing agents knew of and ratified the acts of the Johnson & Johnson Defendants, as alleged herein.

206.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally, and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT FOURTEEN – WRONGFUL DEATH
### (All Defendants)

207.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

208.    As a direct and proximate result of the acts and/or omissions of Defendants as set forth herein, the Decedents named in this action used the PRODUCTS in their perineal areas.

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

Subsequent to such use, Decedents developed ovarian cancer, suffered substantial pain and suffering, both physical and emotional in nature, and subsequently died.

209.    Plaintiffs, on behalf of themselves and all of the next of kin of Decedents, are entitled to recover damages as Decedents would have if they were living, as a result of acts and/or omissions of Defendants.

210.    Plaintiffs, on behalf of themselves and all of Decedents' next of kin are also entitled to recover punitive damages and damages for substantial pain and suffering caused to Decedents from the acts and/or omissions of Defendants as fully set forth herein, including without limitations, punitive damages.

211.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Decedents have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally, and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT FIFTEEN – PUNITIVE DAMAGES
### (All Defendants)

212.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

213.    The Defendants have acted willfully, wantonly, maliciously, with an evil motive, and recklessly in one or more of the following ways:

a.  Defendants knew of the unreasonably high risk of ovarian cancer posed by the PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action;

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

b. Despite their knowledge of the high risk of ovarian cancer associated with the PRODUCTS, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling;

c. Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of the PRODUCTS, including Plaintiffs. Defendants knew of the dangers and risks of the PRODUCTS, yet they concealed and/or omitted this information from labels and warnings contained on the PRODUCTS in furtherance of their conspiracy and concerted action. These actions were outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the PRODUCTS.

214.    As a direct and proximate result of the willful, wanton, malicious, evilly motivated and/or reckless conduct of the Defendants, the Plaintiffs have sustained damages as set forth above.

WHEREFORE, Plaintiffs pray for a judgment for punitive damages against all Defendants, jointly and severally, in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

## COUNT SIXTEEN – DAMAGES
### (Against All Defendants)

215.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

216.    Defendants knew of the dangerous condition of the PRODUCTS, including that they posed a danger to their consumers, including Plaintiffs, but chose not to include any warnings or information regarding the dangerous condition of the PRODUCTS.

217.    Defendants showed complete indifference to or conscious disregard of the safety of Plaintiffs by their conduct described herein. Defendants knew or should have known failure to

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

include a warning for the PRODUCTS would result in women using the PRODUCTS in their perineal areas and subsequently developing ovarian cancer.

218.    Plaintiffs are entitled to exemplary damages to punish Defendants and to deter Defendants and others in similar situations from like conduct.

WHEREFORE, Plaintiffs pray for judgment against Defendants for exemplary damages for the aggravating circumstances of decedents' deaths, to punish Defendants, and to deter Defendants and others from like conduct, and such other and further relief as this Court deems just, proper, and equitable.

## TOLLING STATUTE OF LIMITATIONS

219.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

220.    Plaintiffs have suffered an illness that has a latency period and does not arise until many years after exposure. Plaintiffs' illnesses did not distinctly manifest themselves until they were made aware that their ovarian cancer could be caused by their use of the Defendants' products. Consequently, the discovery rule applies to these cases, and the statute of limitations has been tolled until the day that Plaintiffs knew or had reason to know that their ovarian cancer was linked to their use of the Defendants' products.

221.    Furthermore, the running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and conduct. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the true risks associated with PRODUCTS.

222.    As a result of Defendants' actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiffs had been exposed

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

223.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth regarding the safety of PRODUCTS. Defendants were under a duty to disclose the true character, quality and nature of PRODUCTS because this was non-public information over which they continue to have exclusive control. Defendants knew that this information was not available to Plaintiffs, their medical providers and/or their health facilities, yet they failed to disclose the information to the public.

224.    Defendants had the ability to and did spend enormous amounts of money in furtherance of their purposes of marketing and promoting a profitable product, notwithstanding the known or reasonably knowable risks. Plaintiffs and medical professionals could not have afforded to and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and they were forced to rely on Defendants' representations.

Respectfully submitted,

ONDER, SHELTON,
O'LEARY & PETERSON, LLC

By:     /s/ Stephanie Rados
        James G. Onder, #38049
        William W. Blair, #58196
        Stephanie L. Rados, #65117
        110 E. Lockwood, 2nd Floor
        St. Louis, MO  63119
        314-963-9000 telephone
        314-963-1700 facsimile
        onder@onderlaw.com
        blair@onderlaw.com
        rados@onderlaw.com

Electronically Filed - City of St. Louis - October 31, 2016 - 10:50 PM

OF COUNSEL:

R. Allen Smith, Jr. – MSB # 99984
THE SMITH LAW FIRM, PLLC
681 Towne Center Boulevard, Suite B
Ridgeland, Mississippi 39157
Telephone:  (601) 952-1422
Facsimile:  (601) 952-1426

Timothy W. Porter – MSB # 9687
Patrick C. Malouf – MSB # 9702
PORTER & MALOUF, PA
Post Office Box 12768
Jackson, Mississippi  39236-2768
Telephone:  (601) 957-1173
Facsimile:  (601) 957-7366

Ted G. Meadows – ALB # MEA014
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Attorneys for Plaintiffs*